HUGO JAIGUAY, ADMINISTRATOR (ESTATE
OF JUAN ROCANO BRITO) *v.*
JOEL VASQUEZ ET AL.
(SC 17814)

Norcott, Katz, Palmer, Zarella and Schaller, Js.

324

Argued November 20, 2007—officially released June 17, 2008

*Brenden P. Leydon*, for the appellant (plaintiff).

*Frank C. Bartlett, Jr.*, with whom was *Sergio C. Deganis*, for the appellee (named defendant).

*Lisa Faris-McNamara*, for the appellees (defendant Percy Montes et al.).

*Opinion*

PALMER, J. This action arises out of an automobile accident in Greenwich in which Juan Rocano Brito (decedent), an employee of Primo's Landscaping, Inc. (Primo's Landscaping), a New York corporation, was killed while riding as a passenger in a pickup truck that was operated by a coworker, Joel Vasquez, and registered to Percy Montes, a coowner and employee of Primo's Landscaping.[1] The plaintiff, Hugo Jaiguay, administrator of the decedent's estate, commenced this action against the defendants Vasquez, Percy Montes and Primo's Landscaping, seeking damages for the

---

[1] Barbara Montes, Percy Montes' wife, is the other coowner of Primo's Landscaping. Each owns 50 percent of the shares of Primo's Landscaping, and each is an officer and director of the corporation.

decedent's allegedly wrongful death. After concluding that New York law applied to the plaintiff's action, the trial court granted the defendants' motions for summary judgment on the ground that the action was barred by the exclusivity provision of New York's Workers' Compensation Law, N.Y. Workers' Comp. Law § 29 (6). On appeal,[2] the plaintiff claims that the trial court improperly granted the defendants' motions for summary judgment because, inter alia, Connecticut's Workers' Compensation Act, General Statutes § 31-275 et seq., which, in contrast to New York law, permits an action for damages arising out of a coworker's negligent operation of a motor vehicle, is the governing law, and, even if New York law applies, genuine issues of material fact remain as to (1) whether Vasquez was operating the vehicle in the course of his employment, and (2) whether Percy Montes' alleged negligence in entrusting the vehicle to Vasquez was work-related. We conclude that the trial court properly determined that the defendants are entitled to summary judgment under the applicable provisions of New York law. We therefore affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On June 19, 2001, Vasquez and the decedent, both of whom were residents of New York, left their work site in Rye Brook, New York, in a 1992 pickup truck driven by Vasquez. At the time, seven other Primo's Landscaping employees were riding in the truck even though the truck's maximum occupancy was five persons. Percy Montes, a New York resident, had registered and insured the truck in his own name, but it was used exclusively by Primo's Landscaping.[3] Vasquez was driving along King Street in

---

[2] The plaintiff appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] Percy Montes had purchased the truck on December 28, 2000, a few days before Primo's Landscaping was registered as a corporation on January 2, 2001. Although Percy Montes registered and insured the truck in his own

Greenwich when he crossed the center line of the road and collided with an oncoming vehicle. At the time of the accident, Vasquez, who had a New York state driver's permit but not a driver's license, was traveling approximately seventy miles per hour in a zone with a speed limit of thirty miles per hour, and had just passed a sign warning of a sharp curve in the road ahead.[4] The decedent was pronounced dead at the scene of the accident. According to Vasquez, for some weeks prior to the accident, the truck's brakes had not been working properly, a fact that he had brought to the attention of a coworker, Ray Tello, who had promised to inform Primo's Landscaping's mechanic of the problem. Vasquez eventually pleaded guilty in Connecticut to negligent homicide with a motor vehicle and was sentenced to six months imprisonment.

On December 7, 2004, the New York workers' compensation board awarded survivor's benefits to the decedent's two minor children. Thereafter, the plaintiff brought this action, claiming, inter alia, that the decedent's death had been caused by Vasquez' reckless operation of the pickup truck. The plaintiff also alleged that Percy Montes negligently had entrusted a defective vehicle to a driver whom he knew did not have a valid driver's license.[5] The defendants filed motions for summary judgment, claiming that the action was barred

name, he had purchased it for use by Primo's Landscaping, and the truck was garaged at the company's place of business and repaired and serviced by one of the company's employees. In addition, on June 19, 2001, Percy Montes was in the process of transferring the truck's title to Primo's Landscaping, although that process had not yet been completed.

[4] We note that there is a factual dispute with respect to the truck's destination at the time of the accident and whether Vasquez was operating the truck in the course of his employment at that time. We discuss this issue more fully in part II of this opinion. Regardless of the truck's specific destination, however, it is undisputed that the vehicle briefly entered Connecticut en route from its point of departure in New York to a destination in New York.

[5] The plaintiff alleged that Vasquez was reckless or, alternatively, negligent, in his operation of the truck. The plaintiff also alleged negligence and negli-

by the exclusivity provision of New York's Workers' Compensation Law, which contain no exception for actions against a coworker arising out of that coworker's work-related, negligent operation of a motor vehicle. The plaintiff claimed that Connecticut's Workers' Compensation Act, which has such an exception; see General Statutes § 31-293a; is applicable. Upon consideration of the interests of the two states and the reasonable expectations of the parties, the trial court agreed with the defendants that New York law applies, granted their motions for summary judgment and rendered judgment thereon. The plaintiff appeals from the trial court's judgment.[6] Additional facts and procedural history will be set forth as necessary.

I

The plaintiff first claims that the trial court improperly determined that New York law applies to the case. The plaintiff contends that Connecticut law is applicable because the injury occurred in this state and because Connecticut has a strong interest in deterring the reckless conduct of drivers who use its roads. Contrary to the plaintiff's contention, the trial court correctly concluded that New York law governs.

We begin our review of the plaintiff's claim by summarizing the relevant portions of the workers' compensation statutes of Connecticut and New York. "Connecticut's Workers' Compensation Act . . . is the exclusive remedy for injuries sustained by an employee

gent entrustment against both Percy Montes and Primo's Landscaping for providing Vasquez with a defective vehicle and for permitting Vasquez to operate the truck without a driver's license. The plaintiff's claims against Primo's Landscaping apparently were predicated on the contention that the negligence attributable to Primo's Landscaping occurred outside the scope of the decedent's employment.

[6] The plaintiff expressly has abandoned his appeal insofar as it relates to his claims against Primo's Landscaping. Thus, we hereinafter refer to Vasquez and Percy Montes collectively as the defendants.

arising out of and in the course of his employment. . . . General Statutes § 31-284 (a). Under the act's strict liability provisions, workers are compensated without regard to fault. In return for a relatively low burden of proof and expeditious recovery, employees relinquish their right to any common-law tort claim for their injuries. . . . Generally, then, all rights and claims between employers and employees, or their representatives or dependents, arising out of personal injury or death sustained in the course of employment are abolished as a result of the act's exclusivity bar.

"Another provision of [this state's] act, [namely] . . . § 31-293a, creates an exception, however, to the otherwise applicable exclusivity bar. In relevant part, § 31-293a provides that [i]f an employee . . . has a right to benefits or compensation . . . on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee unless such wrong was wilful or malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle. . . . As we explained in *Colangelo* v. *Heckelman*, 279 Conn. 177, 183–84, 900 A.2d 1266 (2006), if an employee suffers injuries, which otherwise would be compensable under the act, due to the negligence of a fellow employee, the injured employee is barred from recovery against that fellow employee unless the injuries were caused by the fellow employee's negligent operation of a motor vehicle." (Citation omitted; internal quotation marks omitted.) *Johnson* v. *Atkinson*, 283 Conn. 243, 251–52, 926 A.2d 656 (2007).

The statutory scheme for workers' compensation in New York contains an exclusivity provision similar to our own. "It is well recognized that the [New York

workers'] compensation statute was designed to provide a swift and sure source of benefits to the injured employee or to the dependents of the deceased employee. The price for these secure benefits is the loss of the common-law tort action in which greater benefits might be obtained. Thus, unless the employee can establish the existence of a limited number of exceptional circumstances, the sole remedy is [workers'] compensation." *O'Rourke* v. *Long*, 41 N.Y.2d 219, 222, 359 N.E.2d 1347, 391 N.Y.S.2d 553 (1976). Unlike this state's law, however, the New York statutory scheme contains no provision authorizing an employee to bring a common-law tort action against a coworker for damages stemming from the coworker's work-related, negligent operation of a motor vehicle. See generally N.Y. Workers' Comp. Law § 29 (6) (McKinney 2005).[7]

We now consider the plaintiff's contention that our choice of law principles compel the conclusion that this case is governed by Connecticut law. Although this

---

[7] Subdivision (6) of § 29 of New York's Workers' Compensation Law provides: "The right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee, or in case of death his or her dependents, when such employee is injured or killed by the negligence or wrong of another in the same employ, the employer's insurer or any collective bargaining agent of the employer's employees or any employee, of such insurer or such collective bargaining agent (while acting within the scope of his or her employment). The limitation of liability of an employer set forth in section eleven of this article for the injury or death of an employee shall be applicable to another in the same employ, the employer's insurer, any collective bargaining agent of the employer's employees or any employee of the employer's insurer or such collective bargaining agent (while acting within the scope of his or her employment). The option to maintain an action in the courts for damages based on the employer's failure to secure compensation for injured employees and their dependents as set forth in section eleven of this article shall not be construed to include the right to maintain an action against another in the same employ, the employer's insurer, any collective bargaining agent of the employer's employees or any employee of the employer's insurer or such collective bargaining agent (while acting within the scope of his or her employment)." N.Y. Workers' Comp. Law § 29 (6) (McKinney 2005).

court, in *Johnson* v. *Atkinson*, supra, 283 Conn. 243, recently addressed certain issues relating to choice of law questions in workers' compensation cases, our jurisprudence in this area has not been fully consistent or illuminating. This case presents an appropriate opportunity for us to reconsider and clarify the choice of law approach that is most appropriate when, as in the present case, a plaintiff who has been awarded workers' compensation benefits brings a common-law tort action seeking damages for injuries sustained as a result of a coworker's allegedly negligent operation of a motor vehicle. To that end, it is necessary to review those cases of this court and the Appellate Court that have considered choice of law issues pertaining to the question posed by the present case. As we explain more fully hereinafter, those cases fall into two general categories, namely, cases that involve claims for workers' compensation benefits in this state, and cases, like the present one, involving tort actions permitted by an exception to the exclusivity provisions of the applicable workers' compensation scheme.

We begin our review with *Simaitis* v. *Flood*, 182 Conn. 24, 437 A.2d 828 (1980). In *Simaitis*, we were required to decide which choice of law rule to apply in a case involving a negligence claim asserted under the motor vehicle exception of § 31-293a. See id., 27. The named plaintiff, Catherine Simaitis, and the defendant, Susan Flood, both lived in Connecticut, worked for the same Connecticut corporation and had their principal place of employment in this state. Id., 26. The parties were in Tennessee on a business trip when Simaitis was injured while she was a passenger in a vehicle operated by Flood. Id., 25–26. After applying for and receiving workers' compensation benefits in Connecticut; id., 26; Simaitis also brought a negligence action against Flood, who filed a motion for summary judgment, claiming that the action was barred by the exclusivity provisions of Tennessee's workers' compensation

law, which, she maintained, applied to the case. See id., 27, 29.

Simaitis urged the trial court to adopt a choice of law rule predicated on the place where the employment contract was made. Id., 27. Because the employment contract had been entered into in Connecticut, under the rule advocated by Simaitis, she would have been able to pursue her claim against Flood under the exception to the exclusivity provisions of this state's Workers' Compensation Act. See id., citing General Statutes § 31-293a. Flood asserted that, because the action sounded in tort, the trial court should apply the choice of law principle applicable to tort actions, which, at the time, was the lex loci delicti rule, otherwise known as the place of injury rule. *Simaitis* v. *Flood*, supra, 182 Conn. 29. Because the accident had occurred in Tennessee, use of the tort choice of law principle would have resulted in the application of Tennessee law, which, in contrast to Connecticut law, contained no motor vehicle exception to the exclusivity provisions of Tennessee's workers' compensation scheme. Id., 27.

Upon consideration of the two different choice of law rules advocated by the parties, and after explaining the potential shortcomings of both proposed rules, we determined that neither methodology was completely satisfactory. Id., 27–31. We concluded, instead, that "[t]he proper choice of law rules to apply . . . are the rules traditionally applied to workers' compensation conflicts cases." Id., 31. We then examined several approaches that had been developed for workers' compensation cases, beginning with the "interests analysis" approach utilized by the United States Supreme Court in *Thomas* v. *Washington Gas Light Co.*, 448 U.S. 261, 100 S. Ct. 2647, 65 L. Ed. 2d 757 (1980).

In *Thomas*, the claimant, a resident of the District of Columbia, was awarded workers' compensation benefits in Virginia arising out of a work-related accident in

that state. Id., 264. Despite a provision of Virginia law that excluded any other recovery "at common law or otherwise"; (internal quotation marks omitted) id., 265; the claimant thereafter received supplemental benefits in the District of Columbia, the principal place of business of his employer, the defendant. See id., 266. The United States Court of Appeals for the Fourth Circuit concluded, however, that the supplemental award was precluded by the full faith and credit clause of the United States constitution. Id.; see U.S. Const., art. IV, § 1. The United States Supreme Court reversed the judgment of the Fourth Circuit. *Thomas* v. *Washington Gas Light Co.*, supra, 448 U.S. 286. A plurality of the court employed an interests analysis designed to ascertain "whether Virginia's interest in the integrity of its tribunal's determinations forecloses a second proceeding to obtain a supplemental award in the District of Columbia." Id., 280. Upon application of the analysis, the plurality concluded that a state that has awarded workers' compensation benefits to an injured employee cannot invoke the full faith and credit clause to prevent a second state from awarding supplemental compensation to the employee "when that second [s]tate would have had the power to apply its [workers'] compensation law in the first instance." Id., 286. In essence, therefore, the plurality held that, within the context of the federal system, Virginia did not have a sufficient interest in the finality of its award to prevent the District of Columbia from awarding benefits to the injured employee. See id. Although *Thomas* involved a claim for supplemental workers' compensation benefits and *Simaitis* involved a common-law tort action, the court in *Simaitis* nevertheless applied the interests analysis that the court in *Thomas* had used, concluding that, upon application of that test, Connecticut's interest in providing Simaitis with the opportunity to recover against Flood, as Connecticut law permits, was paramount to any interest

that Tennessee had in preventing such a recovery. *Simaitis* v. *Flood,* supra, 182 Conn. 32–33.

We then observed that, "[b]eyond an interest[s] analysis, both the second Restatement of Conflict of Laws and Professor [Arthur] Larson's treatise on workers' compensation; [1] Restatement (Second), Conflict of Laws § 181 [1971]; 4 [A.] Larson, Workmen's Compensation Law § 87.40 [1976], pp. 16-84 [through] 16-95; suggest approaches which lead to the same result." *Simaitis* v. *Flood,* supra, 182 Conn. 33. We first considered § 181 of the Restatement (Second) of Conflict of Laws, which provides: "A State of the United States may consistently with the requirements of due process award relief to a person under its [workers'] compensation statute, if

"(a) the person is injured in the State, or

"(b) the employment is principally located in the State, or

"(c) the employer supervised the employee's activities from a place of business in the State, or

"(d) the State is that of most significant relationship to the contract of employment with respect to the issue of [workers'] compensation under the rules of §§ 187–188 and 196, or

"(e) the parties have agreed in the contract of employment or otherwise that their rights should be determined under the [workers'] compensation act of the State, or

"(f) the State has some other reasonable relationship to the occurrence, the parties and the employment." 1 Restatement (Second), supra, § 181, p. 537.

Although the test set forth in the Restatement (Second) addresses the issue of whether a state may award workers' compensation benefits consistent with the

requirements of due process, we nevertheless applied that test to the choice of law issue presented by Simaitis' tort action against Flood. We concluded that, on the basis of the facts presented, "the right of action provided by [this state's] Workers' Compensation Act [was] clearly available to [Simaitis] under (b), (d) or (f) . . . [of § 181 of the Restatement (Second) of Conflicts of Laws]. The action [also was] available to [Simaitis] under criterion (c) upon a showing of additional supporting facts." *Simaitis* v. *Flood*, supra, 182 Conn. 33–34.

We then proceeded to consider the approach advocated by Professor Larson in his treatise on workers' compensation law. "According to Professor Larson, the applicable law in a workers' compensation case is the law of the place of the employment relation, because 'the existence of the employer-employee relation within the state gives the state an interest in controlling the incidents of that relation, one of which incidents is the right to receive and the obligation to pay [workers'] compensation.'" Id., 34, quoting 4 A. Larson, supra, § 87.40, p. 16-84. We explained that this test also supported the conclusion that Connecticut law applied to Simaitis' action because the "employment relation" existed in Connecticut rather than Tennessee. *Simaitis* v. *Flood*, supra, 182 Conn. 34.

Inasmuch as all three tests compelled the conclusion that Connecticut law applied, we concluded that Simaitis was entitled to proceed against Flood under the motor vehicle exception to this state's workers' compensation exclusivity provisions. Because the three tests all led to the same result, however, "it was unnecessary [in *Simaitis*] to adopt a comprehensive conflict of laws rule for workers' compensation cases . . . ." (Internal quotation marks omitted.) *Johnson* v. *Atkinson*, supra, 283 Conn. 255.

We subsequently addressed a choice of law issue in the context of a workers' compensation case in *Cleveland* v. *U.S. Printing Ink, Inc.*, 218 Conn. 181, 588 A.2d 194 (1991). In *Cleveland*, the plaintiff, Joseph Cleveland, a resident of New Jersey and an employee of the named defendant, U.S. Printing Ink, Inc., a New Jersey corporation, was injured in this state during the course of his employment. Id., 182. He was awarded workers' compensation benefits in New Jersey but also sought benefits in Connecticut. Id. After a hearing on his application for benefits in this state, a workers' compensation commissioner found that Cleveland spent approximately 35 to 40 percent of his employment time in Connecticut. Id., 183. The commissioner also determined that Cleveland "ha[d] enough significant contacts with [Connecticut]" to entitle him to supplemental benefits in this state. (Internal quotation marks omitted.) Id. The compensation review division[8] affirmed the commissioner's decision, and the Appellate Court affirmed the decision of the compensation review division. *Cleveland* v. *U.S. Printing Ink, Inc.*, 21 Conn. App. 610, 618, 575 A.2d 257 (1990).

Following this court's grant of certification to appeal, we affirmed the judgment of the Appellate Court. *Cleveland* v. *U.S. Printing Ink, Inc.*, supra, 218 Conn. 195. In doing so, we emphasized that "Connecticut has an interest in compensating injured employees to the fullest extent possible. . . . Regardless of where an employee first seeks an award of benefits, he or she is entitled to the maximum amount allowed to an individual under either comprehensive legislative scheme." (Citations omitted; internal quotation marks omitted.) Id., 194. Accordingly, we concluded that "[t]he remedial

---

[8] The name of the organization responsible for reviewing the decisions of the workers' compensation commissioners was changed from the compensation review division to the compensation review board in 1991. See Public Acts 1991, No. 91-339, § 32.

purpose of our Workers' Compensation Act supports application of its provisions in cases [in which] an injured employee seeks an award of benefits and Connecticut is the place of the injury, the place of the employment contract or the place of the employment relation." Id., 195. Because Cleveland had suffered his employment-related injury in this state, we further concluded that the Appellate Court properly had determined that he was entitled to supplemental benefits in this state.[9] Id.

---

[9] The legislature subsequently signaled its disapproval of our conclusion that Cleveland's injury in this state was sufficient to satisfy the first prong of the three part test that we had adopted in *Cleveland*. See Public Acts, 1993, No. 93-228, § 1 (P.A. 93-228). Specifically, the legislature amended the statutory scheme to exclude from the definition of employee "[a]ny person who is not a resident of this state but is injured in this state during the course of his employment, unless such person (I) works for an employer who has a place of employment or a business facility located in this state at which such person spends at least fifty per cent of his employment time, or (II) works for an employer pursuant to an employment contract to be performed primarily in this state." Public Acts 93-228, § 1, codified at General Statutes (Rev. to 1995) § 31-275 (9) (B) (vi).

We note that, in light of § 31-275 (9) (B) (vi), the plaintiff in the present case could have claimed that the present action is not barred by the exclusivity provisions of this state's Workers' Compensation Act (act), and, therefore, that § 31-293a does not apply at all, because, under § 31-275 (9) (B) (vi), the decedent simply was not an employee for purposes of the act. Our review of the briefs filed by the parties both in this court and in the trial court indicates, however, that the plaintiff's claim is predicated on the motor vehicle exception of § 31-293a. We therefore address that claim. Nevertheless, our conclusion concerning the applicability of New York law would be the same even if the plaintiff had claimed that the act and its exclusivity provisions do not apply because the decedent was not an employee under the act.

Shortly after our decision in *Cleveland*, this court, in *Kluttz* v. *Howard*, 228 Conn. 401, 402–403, 636 A.2d 816 (1994), again was called on to determine whether a claimant who had been injured during the course of his employment in this state and had received workers' compensation benefits in another state also was entitled to supplemental benefits in this state. Because the work-related accident in *Kluttz* had occurred prior to the effective date of the legislative amendment that immediately followed our decision in *Cleveland*, namely, P.A. 93-228, § 1; see *Kluttz* v. *Howard*, supra, 403; we adhered to our holding in *Cleveland* and upheld the decision of the compensation review division affirming the workers' compensation commissioner's

The next pertinent appellate case to consider a workers' compensation choice of law question was *Pimental* v. *Cherne Industries, Inc.*, 46 Conn. App. 142, 698 A.2d 361, cert. denied, 243 Conn. 922, 701 A.2d 343 (1997). In that case, the named plaintiff, Manuel C. Pimental, was injured when a sewer repair device exploded while Pimental was working at a sewer repair project in the town of Groton. Id., 144. At the time of the accident, Pimental, who resided in Massachusetts, was employed by Middlesex Corporation (Middlesex), a Massachusetts corporation with its principal place of business in that state. Id. After Pimental had received workers' compensation benefits in Massachusetts under that state's laws, Pimental and the plaintiff United States Fidelity and Guaranty Company (USF&G), Middlesex's workers' compensation insurance carrier, brought .an action against Anthony Nenna, a Groton town employee, among others, for damages arising out of Nenna's alleged negligence. Id. With respect to the claim against Nenna, USF&G asserted subrogation rights arising under Massachusetts law. Id. Nenna filed a motion for summary judgment against USF&G only, claiming that, under Connecticut law, USF&G was prohibited from bringing a direct action to assert its subrogation rights. Id. The trial court agreed that Connecticut law applied and granted Nenna's motion for summary judgment. Id., 144–45.

On appeal, USF&G maintained that Massachusetts law, which authorized its subrogation claim, was the governing law. See id., 147–48. Nenna claimed that the trial court properly had determined that, under the test applied in *Cleveland*, Connecticut law applied because Pimental had been injured in Connecticut. See id., 147. The Appellate Court agreed with USF&G that, because

award of supplemental benefits to the claimant even though the only basis for the award of such benefits in this state was the fact that the injury had occurred here. See id., 410.

Pimental was a Massachusetts resident employed by a Massachusetts company, Massachusetts had a greater interest than Connecticut in having its laws applied. Id., 146. In rejecting Nenna's contention that *Cleveland* dictated a contrary conclusion, the Appellate Court distinguished *Cleveland* as a case that had "addressed the issue of whether an injured employee can receive workers' compensation benefits in Connecticut. . . . *Cleveland* [did] not address the choice of law to be applied to workers' compensation issues in the context of third party tort actions, which [was] the issue in [*Pimental*]."[10] (Citation omitted.) Id., 147. Accordingly, the Appellate Court reversed the judgment of the trial court and directed that court to deny Nenna's motion for summary judgment. Id., 148.

In *Burse* v. *American International Airways, Inc.*, 262 Conn. 31, 808 A.2d 672 (2002), this court again was required to decide a choice of law issue involving a claim for workers' compensation benefits in this state. The plaintiff, William J. Burse, resided in Connecticut and was employed as an airline pilot for the named defendant, American International Airways, Inc., a freight carrier based in Michigan that had only minimal contacts with Connecticut. Id., 33, 39–40. After Burse was injured during a flight somewhere over the Midwest, Burse sought workers' compensation benefits in Connecticut. Id., 34. The workers' compensation commissioner concluded that Burse was entitled to benefits because Connecticut was Burse's place of employment

---

[10] Adhering to the approach that this court took in *Simaitis*, the Appellate Court also "look[ed] beyond an interest analysis and examine[d] the Restatement (Second) of Conflict of Laws and Professor Larson's treatise on workers' compensation; 1 Restatement (Second), [supra, § 181, p. 537]; 4 A. Larson, [supra] § 87.40, pp. 16-84 through 16-95 . . . ." *Pimental* v. *Cherne Industries, Inc.*, supra, 46 Conn. App. 146. The Appellate Court concluded that each of those approaches, as applied to the facts of the case, dictated the same result, that is, that USF&G's claim was governed by Massachusetts law. Id., 146–47.

and the place of the employment contract. Id., 35. The compensation review board affirmed the commissioner's decision. Id. On appeal to this court, we reviewed the test set forth in *Cleveland* and refined it, explaining that a claimant seeking workers' compensation benefits in this state as the place of the employment contract or the employment relationship must, "at a minimum, [make] a showing of a *significant* relationship between Connecticut and either the employment contract or the employment relationship."[11] (Emphasis in original.) Id., 38–39. Upon review of the facts, we concluded that the compensation review board improperly had determined that Burse had established the requisite nexus between Connecticut and the employment contract or relationship to warrant the award of workers' compensation benefits in this state. Id., 40, 45.

The next case relevant to our analysis is *Snyder* v. *Seldin*, 81 Conn. App. 718, 841 A.2d 701 (2004), which involved a common-law negligence action. In *Snyder*, the plaintiff, Jennifer Snyder, and the defendant, Barbara Seldin, were employed by Casual Corner Group, Inc. (Casual Corner), which had its corporate headquarters in Connecticut. Id., 720. Both Snyder and Seldin were residents of New York, and Snyder had been principally employed at Casual Corner retail stores in New York since commencing her employment with Casual Corner. Id. While on their way to a meeting at Casual Corner's Connecticut headquarters, Snyder was injured in a car that Seldin was driving. Id. Snyder received workers' compensation benefits in New York and then commenced a negligence action against Seldin as permitted by § 31-293a. See id. The trial court granted Seldin's motion for summary judgment on the ground that

---

[11] Because Burse's injury did not occur in Connecticut, the first part of the *Cleveland* test, namely, the place of the injury; see *Cleveland* v. *U.S. Printing Ink, Inc.*, supra, 218 Conn. 195; was not applicable. *Burse* v. *American International Airways, Inc.*, supra, 262 Conn. 39 n.12.

New York's Workers' Compensation Law, which contains no exception comparable to § 31-293a, was the governing law and barred Snyder's action. Id., 719–21. The Appellate Court affirmed the judgment of the trial court. Id., 725.

In reaching its decision, the Appellate Court examined *Simaitis* and *Pimental,* the two other appellate cases involving negligence actions that were not barred by the exclusivity provisions of this state's Workers' Compensation Act, and concluded that an interests analysis was the proper methodology for determining whether New York or Connecticut law was applicable. Id., 722–23. After observing that Snyder had received workers' compensation benefits under New York law, the court explained that "New York's interest in compensating an injured employee, a New York resident, while precluding her from bringing a negligence action against her coemployee, who also [was] a New York resident, for injuries sustained in the course of [her] employment, [was] clear and legitimate. New York's interest further lies in the fact that [Snyder's] employment relationship with Casual Corner began and ha[d] always existed in New York, and that [Snyder] ha[d] traveled to Connecticut for business only twice since [she was] hired by Casual Corner . . . ." Id., 723. In light of those facts and circumstances, the court characterized New York's interest in having its laws applied as substantial. Id. The court also stated "that Connecticut's interest lies in the fact that the injury occurred within its borders and on its highways"; id.; and that Casual Corner's headquarters were located in Connecticut. Id., 723–24. With respect to the place of the injury, the Appellate Court stated that, "although the place where the injury occurred might [have been] one factor to consider, it [was] not dispositive of the issue and clearly [did] not outweigh New York's interests." Id., 723. With respect to the fact that Casual Corner's corporate

offices were located in Connecticut, the court concluded that, "[a]lthough the location of the headquarters [also was] one factor to consider, [it could not] go as far as to say that this alone [gave] Connecticut the greater interest under the facts presented. Although it might [have been] true that Connecticut [was] the center of Casual Corner's corporate operations, it [did] not necessarily follow that it [was] the center of the parties' relationship with Casual Corner because [Snyder] was principally employed in New York and the parties were both New York residents. Given the facts presented, the parties clearly had an expectation that they would be entitled to the rights, privileges and immunities of New York law. Consequently, because New York ha[d] the greater interest . . . it was proper [for the trial court] to apply New York law."[12] Id., 724.

This court most recently applied workers' compensation choice of law principles in *Johnson* v. *Atkinson*, supra, 283 Conn. 243. In *Johnson*, the named plaintiff, Richard Johnson, the administrator of the estate of Robert M. Wysiekierski, brought an action against the named defendant, Ronald Atkinson, among others. Id., 245. Wysiekierski and Atkinson both were employed by the defendant Rex Lumber Company (Rex Lumber), a corporation licensed to do business in both Connecticut and New Jersey. Id., 246. Wysiekierski's principal place of employment and residence were in New Jersey; Atkinson's principal place of employment and residence were in Connecticut. Id. Wysiekierski was killed in New Jersey when Atkinson accidentally ran over him while operating a tractor trailer on Rex Lumber's premises. Id. After Wysiekierski's widow had received workers'

---

[12] In addition, the Appellate Court considered the tests set forth in Restatement (Second) of Conflict of Laws and Professor Larson's treatise, which the courts in *Simaitis* and *Pimental* had examined, and concluded that those tests also compelled the conclusion that New York law was the applicable law. *Snyder* v. *Seldin*, supra, 81 Conn. App. 724–25.

compensation death benefits from New Jersey, Johnson brought a negligence action against Atkinson in Connecticut on behalf of Wysiekierski's estate pursuant to the motor vehicle exception to the exclusivity provisions of this state's Workers' Compensation Act. Id.; see General Statutes § 31-293a. The trial court granted Atkinson's motion for summary judgment, concluding that the action was governed by New Jersey law, which does not contain a motor vehicle exception to its workers' compensation exclusivity provisions. See *Johnson* v. *Atkinson*, supra, 247.

On appeal, we agreed that New Jersey law applied and, accordingly, affirmed the trial court's judgment. Id., 250–51, 257. In doing so, we reviewed the choice of law principles in *Simaitis*, *Cleveland* and *Burse*. Id., 253–57. We determined that these cases had developed a three part test that permitted the application of Connecticut law to a workers' compensation case if Connecticut is the place of the injury, the place of the employment contract or the place of the employment relationship. Id., 256. Because Wysiekierski had not been injured in Connecticut, we noted, as we had in *Burse*, that the first prong of the test was inapplicable. Id., 257 n.5. We therefore analyzed the second two prongs of the test, explaining that, under *Burse*, Johnson was required to demonstrate a significant relationship between Connecticut and either the employment contract or the employment relationship. Id., 256. We concluded that, because Johnson had failed to satisfy either requirement, the trial court properly had determined that New Jersey law was applicable and that that fact defeated Johnson's claim. Id., 256–57.

In the course of our analysis of Johnson's contention that the trial court should have applied Connecticut law rather than the law of New Jersey, we addressed a claim by Johnson that, for purposes of our analysis, we should differentiate between cases such as *Simaitis*,

*Pimental* and *Snyder*, which involved negligence actions permitted by an exception to the exclusivity provisions of the applicable workers' compensation statutes, and cases such as *Cleveland* and *Burse*, in which the claimant sought workers' compensation benefits in this state. Id., 253. We rejected Johnson's claim, explaining our reason for doing so as follows: "The plaintiff's contention that *Simaitis*, and not *Burse* or *Cleveland*, establishes the appropriate choice of law analysis . . . cannot be supported. Although *Simaitis*, like [*Johnson*], involved a negligence claim against a fellow employee under § 31-293a, nothing in the language of [*Simaitis*], or of *Burse* or *Cleveland*, suggests that such claims call for a different choice of law analysis from that for workers' compensation claims generally." Id., 256–57. Accordingly, we concluded "that only one choice of law analysis applies to all workers' compensation cases and claims . . . ." Id., 254. In reaching this conclusion, we expressly disavowed the reasoning of the Appellate Court in *Pimental*, stating that, in that case, "the Appellate Court determined that *Cleveland* [did] not address the choice of law to be applied to workers' compensation issues in the context of third party tort actions . . . . [*Pimental* v. *Cherne Industries, Inc.*, supra, 46 Conn. App.] 147. . . . [W]e clarify that the three part significant relationship test outlined first in *Cleveland* and then refined in *Burse* . . . is the controlling choice of law analysis for all workers' compensation cases and claims in Connecticut. To the extent that *Pimental* conflicts with this determination, we disagree with it." (Citation omitted.) *Johnson* v. *Atkinson*, supra, 283 Conn. 256 n.4.

With this case law as background, we return to the claim of the plaintiff in the present case. The plaintiff contends that, because the three-pronged test that we adopted in *Johnson* is expressed in the disjunctive; see id., 256 (Connecticut law applies if Connecticut is place

of injury, place of employment contract or place of employment relation); and because the place of the injury in this case is Connecticut, the law of Connecticut applies. We acknowledge that a strict application of the test that we endorsed in *Johnson* would require such a result because the injury occurred in this state.[13] Upon reconsideration of our analysis in *Johnson*, however, we now conclude that the three-pronged test that we approved in that case applies only when the case involves a claim for workers' compensation benefits and not when, as in the present case, the case involves a tort claim.

We reach this conclusion because the considerations relevant to the choice of law issues raised by the two kinds of cases are materially different. In the category of cases involving claims for workers' compensation benefits in this state, the issue is whether this state has a sufficient interest in having an injured employee receive an award of benefits under the laws of this state. Because this state has a strong interest in compensating injured employees; see, e.g., *Burse* v. *American International Airways, Inc.*, supra, 262 Conn. 37; a question arises as to the permissible limits of that interest.[14]

---

[13] As we previously have noted, in *Johnson*, we did not consider the applicability of the first prong of the three part test, that is, the place of the injury, because the injury in *Johnson* did not occur in this state. *Johnson* v. *Atkinson*, supra, 283 Conn. 257 n.5. There is nothing in *Johnson*, however, to suggest that the test that we adopted in that case is inapplicable when Connecticut is the place of the injury. On the contrary, we indicated that the three part test applies to all workers' compensation cases and claims. Id., 254, 256. Indeed, the case from which that test derived, *Cleveland* v. *U.S. Printing Ink, Inc.*, supra, 218 Conn. 192–93, itself involved a motor vehicle accident in this state. Id., 182.

[14] We note, however, that, despite this state's significant interest in having injured employees compensated under its laws, the legislature has limited the universe of employees who are entitled to benefits in this state when this state is the place of the injury. See footnote 9 of this opinion. Contrary to this court's pronouncements, therefore, it no longer is strictly true that this state has an interest in compensating injured employees "to the fullest extent possible . . . ." (Internal quotation marks omitted.) *Burse* v. *American International Airways, Inc.*, supra, 262 Conn. 37.

See, e.g., *Simaitis* v. *Flood*, supra, 182 Conn. 32–33 (weighing states' interests in compensating injured employee). Indeed, depending on the facts and circumstances of the work-related injury and the nature and place of the employment contract and relationship, more than one state may have a legitimate interest in having an injured employee compensated under the applicable workers' compensation statutes.[15] See, e.g., *Cleveland* v. *U.S. Printing Ink, Inc.*, supra, 218 Conn. 182, 195 (upholding award of benefits in this state after claimant already had received benefits in another state); see also *McGowan* v. *General Dynamics Corp.*, 15 Conn. App. 615, 618–19, 546 A.2d 893 (1988) (applying rule of concurrent jurisdiction between this state's Workers' Compensation Act and Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq.), aff'd, 210 Conn. 580, 556 A.2d 587 (1989). Consequently, the choice of law question posed by a claim for workers' compensation benefits in this state is not whether Connecticut has the *most* significant relationship to or interest in the matter but, rather, whether Connecticut's relationship or interest is *sufficiently* significant to warrant an award of benefits under its workers' compensation statutes. Thus, in *Cleveland*, we concluded that this state's interest in awarding workers' compensation benefits to an injured employee is satisfied *either* when Connecticut is (1) the place of the injury, *or* (2) the place of the employment contract, *or* (3) the place of the employment relationship.[16] *Cleveland* v. *U.S. Printing Ink, Inc.*, supra, 195. We have no

---

[15] Of course, an employee who is entitled to workers' compensation benefits in more than one state may receive no more than the maximum amount of benefits allowed to an individual under either one of the states' legislative schemes. See *Cleveland* v. *U.S. Printing Ink, Inc.*, supra, 218 Conn. 194. To conclude otherwise would result in a prohibited double recovery by the employee. See *McGowan* v. *General Dynamics Corp.*, 15 Conn. App. 615, 618, 546 A.2d 893 (1988), aff'd, 210 Conn. 580, 556 A.2d 587 (1989).

[16] As we have explained, following our opinion in *Cleveland*, the legislature amended our Workers' Compensation Act, effectively modifying the first prong of the test. See footnote 9 of this opinion.

reason to disturb that test insofar as it applies to cases, like *Cleveland*, in which the choice of law issue presented is whether a claimant seeking workers' compensation benefits in this state is entitled to such benefits under this state's Workers' Compensation Act.

A markedly different choice of law issue is posed, however, when, as in the present case, an injured employee brings a tort action that ostensibly falls within an exception to the exclusivity provisions of our Workers' Compensation Act. In that category of cases, the choice of law question is not which state among one or more other states has a *sufficient* interest in having its statutes invoked for the benefit of the employee. The issue, rather, is which state's law, to the *exclusion* of the law of all other potentially interested states, is the governing or controlling law.[17] Although the present action arises in the employment context and is authorized by a provision of our Workers' Compensation Act that exempts from its exclusivity provisions common-law claims predicated on a coworker's negligent operation of a motor vehicle, the action sounds in tort. Therefore, we see no reason why we should not utilize the choice of law analysis applicable to tort cases.[18] Of

---

[17] As we have noted; see *Johnson* v. *Atkinson*, supra, 283 Conn. 256 n.4; the Appellate Court apparently recognized this distinction in *Pimental* v. *Cherne Industries, Inc.*, supra, 46 Conn. App. 147.

[18] Courts of other states that have addressed choice of law questions pertaining to tort claims permitted by an exception to the exclusivity provisions of their states' workers' compensation schemes have applied their states' choice of law analysis applicable to tort claims, not a separate analysis for workers' compensation claims. See, e.g., *Schubert* v. *Target Stores, Inc.*, 360 Ark. 404, 410, 201 S.W.3d 917 (2005); *Dowis* v. *Mud Slingers, Inc.*, 279 Ga. 808, 809, 816, 621 S.E.2d 413 (2005); *Powe* v. *Roy Anderson Construction Co.*, 910 So. 2d 1197, 1204 (Miss. App. 2005), cert. denied, 942 So. 2d 164 (Miss. 2006); cf. *Oberson* v. *Federated Mutual Ins. Co.*, 330 Mont. 1, 4–7, 126 P.3d 459 (2005).

We also note that it would make little sense to apply the three-pronged disjunctive test first set forth in *Cleveland* when, as in the present case, the worker is injured in this state but otherwise falls outside the definition of the term "employee" set forth in § 31-275 (9) (B) (vi). See footnote 9 of this opinion. In such circumstances, although the injured worker would satisfy

course, because cases that arise under an exception to the exclusivity provisions of a state's workers' compensation scheme invariably will have a strong nexus to the employment relationship, the application of the choice of law analysis applicable in tort cases must be undertaken with due regard to the importance of that relationship. Nevertheless, in light of our conclusion that a tort choice of law analysis applies to tort actions brought under an exception to the exclusivity provisions of the Workers' Compensation Act, we overrule our holding in *Johnson* that the same choice of law analysis applies to tort claims and claims for workers' compensation benefits.[19]

It is true that we rejected such an approach in *Simaitis*, a case that involved facts very similar to those of the present case. *Simaitis* v. *Flood*, supra, 182 Conn. 29–31. We did so, however, because, at that time, this court adhered to the law of the place of injury when analyzing a tort choice of law issue; see id., 29; and applying that rule resulted in an unsatisfactory resolution of the conflict of laws issue when the state in which the injury occurred had no other relation to or interest in the matter being litigated. See id., 29–30; see also *O'Connor* v. *O'Connor*, 201 Conn. 632, 637, 519 A.2d 13 (1986) (explaining our refusal in *Simaitis* to apply place of injury rule because doing so would have "frustrate[d] the legitimate expectations of the parties and undermine[d] an important policy of this state"). Indeed, as this court subsequently explained in the context of an action for damages arising out of a nonwork-related,

---

the "place of injury" prong of the *Cleveland* test, he would not be an employee within the meaning of this state's Workers' Compensation Act. Consequently, there would be no reason to apply the choice of law test applicable to claims for workers' compensation benefits because our workers' compensation scheme would not be applicable at all.

[19] Of course, a tort choice of law analysis also applies to claims brought by persons who do not meet the definition of "employee" under § 31-275 (9) (B) (vi). See footnote 9 of this opinion.

out-of-state automobile accident, "application of the lex loci delicti doctrine makes determination of the governing law turn [on] a purely fortuitous circumstance: the geographical location of the parties' automobile at the time the accident occurred. Choice of law must not be rendered a matter of happenstance, in which the respective interests of the parties and the concerned jurisdictions receive only coincidental consideration." *O'Connor* v. *O'Connor*, supra, 645–46. Thus, following the lead that we had taken in *Simaitis*, a case involving a third party tort claim authorized by our Workers' Compensation Act, we have moved away from the place of the injury rule for tort actions and adopted the most significant relationship test found in §§ 6 and 145 of the Restatement (Second) of Conflict of Laws.[20] E.g., *Dugan* v. *Mobile Medical Testing Services, Inc.*, 265 Conn. 791, 800–802, 830 A.2d 752 (2003); *Williams* v. *State Farm Mutual Automobile Ins. Co.*, 229

---

[20] "In *O'Connor* v. *O'Connor*, supra, 201 Conn. 648, we expressly abandoned categorical allegiance to the doctrine of lex loci delicti in tort actions. *O'Connor* also involved an action by the passenger of an automobile against the driver for injuries arising out of an automobile accident. Both parties were Connecticut domiciliaries but the accident occurred in [the province of] Quebec, Canada. The principal issue was whether to apply the law of Quebec, which barred the plaintiff's action, or the law of Connecticut, which permitted it. The trial court applied the doctrine of lex loci delicti and granted the [driver's] motion to strike the [passenger's] complaint. On appeal, we substituted the most significant relationship analysis of §§ 6 and 145 of the Restatement [(Second) of Conflict of Laws] . . . for the doctrine of lex loci delicti. . . . After considering the Restatement [Second] factors, we concluded that Connecticut had the closest relationship and the greatest interest in the disposition of the case. We therefore applied the law of Connecticut." (Citations omitted; internal quotation marks omitted.) *Williams* v. *State Farm Mutual Automobile Ins. Co.*, 229 Conn. 359, 371–72, 641 A.2d 783 (1994). In *Williams*, we analyzed the Restatement (Second) factors and concluded that New York law applied to an action arising out of a car accident that occurred in New York but involved a Connecticut plaintiff, because "New York had the greatest contact with the parties." Id., 373; see also *Dugan* v. *Mobile Medical Testing Services, Inc.*, 265 Conn. 791, 800–802, 830 A.2d 752 (2003) (applying most significant relationship test of Restatement [Second] of Conflict of Laws when analyzing tort choice of law issue).

Conn. 359, 371–72, 641 A.2d 783 (1994); *O'Connor* v. *O'Connor*, supra, 649–50. In contrast to the place of injury rule that we rejected in *Simaitis*, the most significant relationship test of the Restatement (Second) that we have adopted for tort actions does not lead to unsatisfactory or anomalous results when applied to actions involving out-of-state motor vehicle accidents. Accordingly, we also adopt that test for purposes of tort actions that, like the present action, involve a claim brought under an exception to the exclusivity provisions of our Workers' Compensation Act.[21]

[21] As we noted previously, in *Simaitis*, we were guided by three different tests. *Simaitis* v. *Flood*, supra, 182 Conn. 31–34. Because, however, each of the tests compelled the same result, we were not required to decide which test to adopt for future cases. See id., 31, 33. For two primary reasons, we adopt the test from §§ 6 and 145 of the Restatement (Second) of Conflict of Laws for tort actions instead of any one of the three tests that we identified in *Simaitis*. First, this court previously has employed the test from §§ 6 and 145 of the Restatement (Second) in tort cases not involving workers' compensation related claims, including cases involving Connecticut residents who were injured outside of Connecticut; see, e.g., *Williams* v. *State Farm Mutual Automobile Ins. Co.*, supra, 229 Conn. 361, 371–72 (accident occurred in New York); *O'Connor* v. *O'Connor*, supra, 201 Conn. 634, 649–50 (accident occurred in Canadian province of Quebec); and that test has worked well in facilitating our resolution of the choice of law issue presented. Second, at least two of the three choice of law approaches that we employed in *Simaitis*, namely, the interests analysis that we borrowed from *Thomas* v. *Washington Gas Light Co.*, supra, 448 U.S. 261; *Simaitis* v. *Flood*, supra, 31–33; and the test set forth in § 181 of the Restatement (Second) of Conflict of Laws; id., 33–34; were designed to facilitate the determination of whether a state's interest in a work-related injury is sufficient to permit an award of workers' compensation benefits in that state. For the reasons set forth previously, those tests were inapposite to the choice of law issue presented in *Simaitis*, and they are inapposite to the same choice of law issue presented in this case. The third test, advocated by Professor Larson, would resolve choice of law questions that arise in the workers' compensation context by application of the law of the place of the employment relationship. We believe that the focus of that test is too narrow. Although the place of the employment relationship is important and is entitled to due weight, the test that we adopt in the present case and that we previously have employed in *Dugan*, *Williams* and *O'Connor* affords due weight to the place of the employment relationship but recognizes—correctly, in our view—that other factors also are relevant and, of course, may predominate. We therefore reject the approaches that we identified in *Simaitis* in favor of the test

We now turn to that test.[22]

We previously have summarized the most significant relationship test set forth in §§ 6 and 145 of the Restatement (Second) as follows. "Subsection (1) of § 145 of the Restatement (Second) of Conflict of Laws provides that '[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.' 1 Restatement (Second), [supra, § 145 (1), p. 414]. Subsection (2) of § 6 of the Restatement (Second) of Conflict of Laws, in turn, provides: 'When there is no [statutory] directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of a particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.' Id., § 6 (2), p. 10.

from §§ 6 and 145 of the Restatement (Second) of Conflict of Laws that we adopt in the present case.

[22] In overruling our prior precedent, we are mindful of the important role that the doctrine of stare decisis plays in our jurisprudence. "The doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . Stare decisis is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency." (Internal quotation marks omitted.) *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 494, 923 A.2d 657 (2007). State decisis, however, is neither an end in itself nor an inexorable command. E.g., *Conway* v. *Wilton*, 238 Conn. 653, 659–60, 680 A.2d 242 (1996). As we have explained, we are persuaded that the approach that we adopt in the present case, although inconsistent with prior decisions of this court, is compelled by logic and reason.

"For assistance in our evaluation of the policy choices set out in §§ 145 (1) and 6 (2) . . . we turn . . . to § 145 (2) . . . which establishes black-letter rules of priority to facilitate the application of the principles of § 6 to tort cases. . . . Subsection (2) of § 145 . . . provides: 'Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.' [Id.], § 145 (2), p. 414." (Citation omitted.) *Dugan* v. *Mobile Medical Testing Services, Inc.*, supra, 265 Conn. 801–802.

We commence our analysis under this test by reviewing the specific contacts that each jurisdiction has to the facts and circumstances underlying the present action. In doing so, we are guided by the contacts enumerated in § 145 (2). Because the record establishes that the parties' relationship clearly was centered in New York, where the decedent and Percy Montes were domiciled and where Primo's Landscaping is headquartered and incorporated, the factors set forth in subdivisions (c) and (d) of § 145 (2) weigh in favor of applying New York law. On the other hand, in view of the fact that the injury and the majority of the conduct causing it occurred in Connecticut, the factors set forth in subdivisions (a) and (b) of § 145 (2) weigh in favor of the application of Connecticut law.[23]

---

[23] To the extent that the plaintiff contends that Percy Montes negligently entrusted the truck to Vasquez and that Vasquez was permitted to drive the vehicle despite the dangerous condition of its brakes, that conduct occurred in New York.

"As *O'Connor* informs us, [however] it is the significance, and not the number, of § 145 (2) contacts that determines the outcome of the choice of law inquiry under the Restatement [Second] approach. As the concluding sentence of § 145 (2) provides, [t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue. *O'Connor* v. *O'Connor*, supra, 201 Conn. 652–53, quoting 1 Restatement (Second), supra, § 145 (2), p. 414." (Internal quotation marks omitted.) *Dugan* v. *Mobile Medical Testing Services, Inc.*, supra, 265 Conn. 803. Upon evaluating the relative importance of each factor, we conclude that New York has the greater contact with the parties in this case. The most significant factors are that (1) Primo's Landscaping employed the decedent in New York, (2) the entirety of the employment relationship was in New York, (3) the decedent, Vasquez and Percy Montes all resided in New York, (4) the pickup truck was registered in New York, and (5) Primo's Landscaping was a New York corporation. Although the accident and the conduct causing it occurred in Connecticut, that is Connecticut's only contact with the matter. Moreover, the sole reason why Vasquez drove the pickup truck into Connecticut from his point of departure in New York was to reach a destination in New York; no one in that vehicle was performing any work in Connecticut or engaged in any other activity that had any connection to Connecticut. Consequently, it was mere happenstance that the accident occurred in Connecticut.

The factors enumerated in § 6 (2) also militate in favor of applying New York law. In determining which state's law should apply under § 6 (2), we must review, inter alia, the respective policies and interests of New York and Connecticut in the controversy. See 1 Restatement (Second), supra, § 6 (2) (b), (c) and (e), p. 10. The plaintiff asserts that Connecticut law should

apply because Connecticut's interests are stronger than those of New York. In particular, the plaintiff contends that Connecticut has a strong interest in deterring drivers from speeding and driving recklessly on its roads and highways. Although Connecticut does have such an interest, we agree with the defendants that its interest in that regard is diminished when the offending conduct occurs during a brief entry into the state and when any accident that occurs as a result of the undue speed or recklessness does not involve a Connecticut resident. See *O'Connor* v. *O'Connor*, supra, 201 Conn. 658 (recognizing that interest of jurisdiction in which motor vehicle accident occurred would be significantly greater if, inter alia, accident involved resident of that jurisdiction). Moreover, Connecticut's interest in deterring and punishing reckless driving is largely satisfied by Vasquez' conviction of negligent homicide in this state.

Moreover, Connecticut has little or no interest in vindicating its policy of permitting actions in accordance with the motor vehicle exception of § 31-293a when, as in the present case, Connecticut has no ties to any person or party involved in the accident. In contrast, because the parties' employment relationship is centered in New York, New York has a clear interest in ensuring that its contrary public policy is honored.[24]

Finally, subdivision (d) of § 6 (2) requires us to examine the expectations of the parties as to what law gov-

---

[24] We note that, because Connecticut's only apparent connection to the conduct and relationships that gave rise to this action is the fact that the accident and conduct causing it occurred here, the decedent is not entitled to workers' compensation benefits in this state. See footnote 9 of this opinion. Indeed, that fact alone is a strong indication that this state's interest in the matter is insufficient to warrant the application of its laws under a tort choice of law test. By contrast, because New York is the situs of the employment relationship and the decedent was a New York resident, New York has an obvious interest in compensating the decedent's surviving dependents under its workers' compensation scheme. As we previously noted, the decedent's children already have been awarded survivor's benefits in New York.

erns their actions. 1 Restatement (Second), supra, § 6 (2) (d). Because the decedent, Vasquez, and Percy Montes all resided in New York, because New York was the situs of the employment relationship and because the parties' only nexus to Connecticut was the fact that the accident fortuitously occurred in Connecticut, the parties reasonably would have expected to be able to invoke the rights and protections available to them under the laws of New York. With respect to subdivisions (f) and (g), which, respectively, require us to consider the certainty, predictability and uniformity of the result and the ease in the determination and application of the law to be applied, we acknowledge that focusing solely on one relevant factor, such as the place of the injury, would result in simpler, more predictable choice of law decisions. As we observed in *O'Connor*, however, these factors "should not be overemphasized, since it is obviously of greater importance that choice-of-law rules lead to desirable results." (Internal quotation marks omitted.) *O'Connor* v. *O'Connor*, supra, 201 Conn. 651–52, quoting 1 Restatement (Second), supra, § 6, comment (j). Moreover, "[a]lthough the principles of certainty and ease of application must be taken into account, the Restatement [Second] cautions against attaching independent weight to these auxiliary factors, noting that they are ancillary to the goal of providing rational, fair choice of law rules." *O'Connor* v. *O'Connor*, supra, 651. Indeed, we previously have been unwilling to predicate a choice of law determination on the place of the injury alone because the primary benefit of such a test, that is, simplicity, is outweighed by the need for a more nuanced, contextual analysis.[25] See, e.g., id., 658 ("[t]he guiding principles of the Restatement [Second] command respect precisely because they

---

[25] Under subdivision (a) of § 6 (2), we also must consider the needs of the interstate and international systems. We do not perceive, however, that those needs are implicated in the present case.

encourage a searching case-by-case contextual inquiry into the significance of the interests that the law of competing jurisdictions may assert in particular controversies").

In sum, the considerations relevant to our inquiry militate strongly in favor of applying New York law. Accordingly, we agree with the trial court that New York law applies.[26]

## II

The plaintiff next claims that, even if New York law applies, the trial court improperly granted Vasquez' motion for summary judgment, notwithstanding the exclusivity provision of New York's Workers' Compensation Law, because there exists a contested issue of material fact as to whether Vasquez was acting within the scope of his employment at the time of the accident. In support of his claim, the plaintiff contends that a jury reasonably could find that Vasquez was not acting in the course of his employment when the accident occurred because the evidence demonstrates that Vasquez (1) committed the equivalent of an intentional tort against the decedent, and (2) was driving to a soccer game, a personal pursuit unrelated to his employment. We conclude that the plaintiff has failed to provide a factual basis to support his claim that Vasquez' conduct places him outside the immunity afforded coworkers under New York's Workers' Compensation Law.[27]

---

[26] The plaintiff also contends that, "[a]llowing New York's exclusivity [provision] for fellow employees to prohibit the present action would violate" the open courts provision of article first, § 10, of the constitution of the state of Connecticut, "as well as [this state's] strong public policy for deterring misconduct on its highways." Because the plaintiff has failed to provide any substantive analysis of these assertions, we decline to address them.

[27] Vasquez asserts that because both he and the decedent's dependents sought and received benefits from the New York workers' compensation board (board), the plaintiff is estopped from raising a claim that, contrary to the board's finding in connection with the award of those benefits, the accident occurred outside the scope of the employment relationship. We disagree with Vasquez' contention. "[A]n adjudication by the board that

New York's Workers' Compensation Law § 29 (6) provides in relevant part that "[t]he right to compensation or benefits . . . shall be the exclusive remedy to an employee, or in case of death his or her dependents, when such employee is injured or killed by the negligence or wrong of another in the same employ . . . ." Nevertheless, "the words 'in the same employ' as used in the Workers' Compensation Law are not satisfied simply because both [the] plaintiff and [the] defendant have the same employer; a defendant, to have the protection of the exclusivity provision, must himself have been acting within the scope of his employment . . . ." *Maines* v. *Cronomer Valley Fire Dept., Inc.*, 50 N.Y.2d 535, 543, 407 N.E.2d 466, 429 N.Y.S.2d 622 (1980).

The plaintiff relies primarily on *Maines* in support of his contention that he has alleged facts sufficient to permit a finding that Vasquez committed an intentional tort against the decedent, thereby placing the present action outside the purview of the coworker immunity

there was a relationship between accident and employment, unless reversed on . . . direct appeal, would preclude any recovery in a civil action against the employer . . . ." (Citation omitted.) *O'Rourke* v. *Long*, supra, 41 N.Y.2d 227. Because the plaintiff is seeking to recover against Vasquez and not Primo's Landscaping, the decedent's former employer, the plaintiff is not barred from demonstrating, in the present action, that the accident occurred outside the scope of the employment relationship. Moreover, the fact that the decedent may have been injured during the course of *his* employment does not necessarily mean that Vasquez was acting in the course of *his* employment when he engaged in the conduct that resulted in the decedent's injuries. See, e.g., *Maines* v. *Cronomer Valley Fire Dept., Inc.*, 50 N.Y.2d 535, 544, 407 N.E.2d 466, 429 N.Y.S.2d 622 (1980) (worker injured by coworker during course of worker's employment may recover against coworker if coworker was acting outside scope of his employment when he inflicted injury). Finally, because the plaintiff was not a party to any proceedings before the board pertaining to Vasquez' claim for benefits, the plaintiff is not bound by the board's finding, made for the purpose of those proceedings, that Vasquez was injured during the course of his employment. Cf. *Hanford* v. *Plaza Packaging Corp.*, 2 N.Y.3d 348, 351, 811 N.E.2d 30, 778 N.Y.S.2d 768 (2004) ("the same event may be 'accidental' from the employer's point of view . . . and intentional from the point of view of the perpetrator").

created by § 29 (6). In *Maines*, the plaintiff, Kenneth Maines, a firefighter, was injured during a hazing that occurred after he was inducted as a senior member of his fire department. Id., 540–41. Several of Maines' fellow firefighters covered his head with a bedsheet, bound his feet and tossed him into a garbage dumpster, where they then threw grease on him and hosed him with water. Id., 541. Though Maines protested that he had landed on broken glass in the dumpster and was hurt, his coworkers closed the lid to the dumpster and left him there for several minutes. Id. When they turned the dumpster on its side and Maines rolled out, they saw that he had severe hand and wrist injuries and rushed him to the hospital. Id. After receiving workers' compensation benefits, Maines commenced an action against his coworkers, alleging that their negligence had caused his injuries. See id., 540–41. The coworkers filed motions to dismiss the action, claiming that workers' compensation benefits constituted Maines' exclusive remedy. See id. The trial court granted the coworkers' motions, and the Appellate Division affirmed the judgment of the trial court. Id., 540.

The New York Court of Appeals reversed, concluding that, although "compensation law is designed to [e]nsure that an employee injured in [the] course of employment will be made whole and to protect a coemployee who . . . acting within the scope of his employment caused the injury, it has not protected the coemployee, even though the injured employee has accepted compensation benefits, when the coemployee was not acting with the scope of his employment at the time he inflicted the injury . . . ." (Citations omitted.) Id., 544. The court concluded that the coworkers "had so far departed from the duties and activities of their positions as volunteer firemen that a jury may find . . . that they were not acting in furtherance of those duties (or in the same employ) when [Maines] was injured."

(Internal quotation marks omitted.) Id., 544–45. The court also explained that "[a] further basis for [its] conclusion exist[ed] in that the complaint liberally construed may [have been] interpreted as alleging that the [coworkers] in throwing [Maines] into the dumpster [had] committed an intentional assault [on] him"; id., 545; and that "a defendant, to have the protection of the exclusivity provision, must . . . have been acting within the scope of his employment and not have been engaged in a [wilful] or intentional tort." Id., 543.

Even though the plaintiff in the present case did not expressly allege in his complaint that Vasquez had engaged in intentional conduct toward the decedent, the plaintiff maintains that Vasquez' conduct was so egregious that it is tantamount to an intentional tort and, therefore, that his claim is not subject to the exclusivity provision of New York's Workers' Compensation Law. In particular, the plaintiff contends that it is not necessary to allege expressly that the offending conduct was intentional for the purpose of avoiding New York's exclusivity provision because, in *Maines*, the court explained that "the complaint in an action against a coemployee . . . for an assault committed outside the scope of the coemployee's employment . . . need only allege deliberate intent or conscious choice to do the act which results in the injury . . . ." (Citations omitted.) Id., 546. The plaintiff also notes that the court in *Maines* rejected the "suggestion that [a] plaintiff must allege that [the offending coworker] intended to bring about the harmful consequences that ensued." Id., 545–46.

The plaintiff's reliance on *Maines* is misplaced. Although the New York Court of Appeals acknowledged that Maines did not expressly allege in his complaint that the coworkers committed an intentional tort; see id., 545; the court also stated that the complaint, fairly construed, contained allegations that Maines' cowork-

ers had committed an intentional assault against him by throwing him into the dumpster and confining him there against his will. See id. The court further observed that, although "the complaint allege[d] negligence and carelessness, it also charge[d] that [the coworkers] 'in concert with one another . . . caused [Maines] to be physically restrained,' recklessly 'failed to discontinue their actions upon [Maines'] resistance, requests and cries,' and 'used physical force on [Maines] for no legitimate or lawful purpose.'" Id. The court determined, therefore, that the allegations of the complaint were sufficient to establish an intentional tort. See id.

In contrast, the complaint in the present case contains no allegation that Vasquez had engaged in any conduct that was directed at the decedent. Thus, there is nothing in the record to indicate that Vasquez' conduct, however deplorable, was calculated or designed to affect the decedent or any of the other occupants of the vehicle. In this important respect, Vasquez' conduct differs from that of Maines' coworkers, who had singled out Maines for the hazing that foreseeably resulted in his injuries. Despite the tragic result of Vasquez' conduct, it cannot be said that that conduct was the equivalent of an intentional assault on the decedent.

The plaintiff also maintains that Vasquez was acting outside the scope of his employment because he was driving to a soccer game at the time of the accident rather than returning to the premises of Primo's Landscaping. Vasquez contends that the plaintiff cannot prevail on this claim because he has not provided any admissible evidence to support his allegation that Vasquez was headed to a soccer game when the accident occurred.[28] We agree with Vasquez.

---

[28] We note that, in New York, "[t]he general rule is that injuries sustained during travel to and from the place of employment do not come within the statute . . . . There are exceptions to this 'going and coming' rule, however. For example, an outside employee, such as a [traveling] salesperson who does not have a fixed worksite, may be compensated for injuries sustained

The following additional facts and procedural history are necessary to our resolution of this issue. At his deposition, Vasquez testified that he and his coworkers were returning to the premises of Primo's Landscaping when the accident occurred. Although Vasquez acknowledged that, at one point, he may have intended to drive to a soccer game in Peekskill, New York, after work that day, by the time he left the worksite, it was too late to make the game, and he, therefore, had abandoned any plans to do so. Vasquez also testified that he was the only member of the work crew who had contemplated participating in the soccer game that evening.

In opposition to Vasquez' motion for summary judgment, the plaintiff submitted the deposition testimony of Percy Montes and Barbara Montes. Percy Montes testified at his deposition that, although he was not aware of the soccer game prior to the accident, several Primo's Landscaping employees told him after the accident that Vasquez had been speeding so that he and his coworkers could get to the soccer game on time. Barbara Montes testified at her deposition that, after the accident, she went to the hospital, where she spoke to several of the injured employees. Those employees told her that the decedent had implored Vasquez to drive faster so that they would not miss the soccer game. Although Barbara Montes spoke to Vasquez after the accident, they did not discuss the issue of where Vasquez was headed at the time of the accident.

in the course of travel between home and appointments . . . ." (Citations omitted.) *Neacosia* v. *New York Power Authority*, 85 N.Y.2d 471, 475, 649 N.E.2d 1188, 626 N.Y.S.2d 44 (1995). The plaintiff does not dispute that Vasquez and the decedent did not have a fixed worksite, and, therefore, their commute back to the premises of Primo's Landscaping would fall within the purview of New York's workers' compensation scheme.

"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a] . . . motion for summary judgment is plenary." (Internal quotation marks omitted.) *Connecticut Medical Ins. Co.* v. *Kulikowski,* 286 Conn. 1, 4–5, 942 A.2d 334 (2008).

The testimony of Percy Montes and Barbara Montes recounting the statements made to them by several of the decedent's injured coworkers contains hearsay. See Conn. Code Evid. § 8-1 (3) (defining hearsay as "a statement, other than one made by the declarant while testifying at the proceeding, offered in evidence to establish the truth of the matter asserted"). Hearsay evidence is inadmissible unless the proponent of the evidence can identify an exception to that general rule. See Conn. Code Evid. § 8-2.

The plaintiff contends that the deposition testimony of Percy Montes and Barbara Montes is admissible under the hearsay exception for statements of a party opponent. See Conn. Code Evid. § 8-3 (1) (excepting from hearsay rule "[a] statement that is being offered against a party and is [A] the party's own statement, in either an individual or a representative capacity").

Under that hearsay exception, the testimony of a witness concerning an out-of-court statement made to that witness by a party is admissible. The plaintiff, however, relies on the Montes' testimony about certain out-of-court statements made by Primo's Landscaping employees. The out-of-court statements of those employees, who are not parties, do not fall within the hearsay exception for statements by party opponents, and they are not admissible under any other hearsay exception identified by the plaintiff. Because factual assertions based on inadmissible hearsay are insufficient for purposes of opposing a motion for summary judgment; see, e.g., *Great Country Bank* v. *Pastore*, 241 Conn. 423, 436–47, 696 A.2d 1254 (1997); *Farrell* v. *Farrell*, 182 Conn. 34, 39, 438 A.2d 415 (1980); the plaintiff has failed to provide evidence that raises a genuine issue of material fact with respect to whether, at the time of the accident, Vasquez was returning to the premises of Primo's Landscaping and, therefore, operating the truck in the course of his employment. Accordingly, the trial court properly granted Vasquez' motion for summary judgment.[29]

### III

The plaintiff also contends that the trial court improperly granted Percy Montes' motion for summary judgment on the plaintiff's claim that Percy Montes

[29] Relying on dictum in *Pasquel* v. *Coverly*, 4 N.Y.2d 28, 148 N.E.2d 899, 171 N.Y.S.2d 848 (1958), the plaintiff also claims that Vasquez' operation of the truck at such an excessive rate of speed and with so many passengers constituted so great a "deviation from the procedure which would normally be followed in accomplishing [a] business errand"; id., 31; that it reasonably may be characterized as outside the scope of his employment. To the extent that an employee who undertakes an otherwise "simple and safe" business mission and "perform[s] it in some extraordinary and hazardous fashion" may be found to be acting outside the scope of employment for purposes of New York's Workers' Compensation Law; id.; we reject the plaintiff's claim that Vasquez' conduct was so extraordinarily "bizarre and dangerous"; id.; that it may be deemed to fall outside his work-related duties.

negligently had entrusted the pickup truck to Vasquez even though he knew that Vasquez did not have a valid driver's license and knew or should have known that the truck's brakes were in disrepair. In support of his claim, the plaintiff asserts that Percy Montes had acted outside the scope of his employment when he provided the truck to Primo's Landscaping because Percy Montes owned the truck. We disagree with the plaintiff.

As we previously have explained, the truck that Vasquez was driving at the time of the accident was registered to Percy Montes. It is undisputed, however, that (1) Percy Montes had purchased the truck for use by Primo's Landscaping, (2) the truck was used exclusively by Primo's Landscaping, (3) the truck was garaged at Primo's Landscaping's place of business and was repaired and serviced by one of Primo's Landscaping's employees, and (4) at the time of the accident, Percy Montes was in the process of transferring ownership of the truck to Primo's Landscaping. Furthermore, it is undisputed that Percy Montes, as an officer of the corporation, was an employee of Primo's Landscaping when the accident occurred. The evidence also reflects that, although he allowed Vasquez to drive the truck, Percy Montes was aware that Vasquez had a learner's permit and not a valid driver's license. In addition, Vasquez had told an employee of Primo's Landscaping that the brakes on the truck were not operating properly.

"[B]ecause the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury . . . ." (Citations omitted.) *Riviello* v. *Waldron*, 47 N.Y.2d 297, 303, 391 N.E.2d 1278, 418 N.Y.S.2d 300 (1979). In the present case, however, even if we accept as true the facts alleged by the plaintiff, we conclude that no reasonable jury could find that Percy Montes was acting outside the scope of his employment when he gave Primo's

Landscaping the truck that Vasquez was driving when the decedent was killed.

"The test for determining whether specific activities are within the scope of employment or purely personal is whether the activities are both reasonable and sufficiently *work related under the circumstances* . . . ." (Citations omitted.) *Neacosia* v. *New York Power Authority*, 85 N.Y.2d 471, 476, 649 N.E.2d 1188, 626 N.Y.S.2d 44 (1995). The uncontradicted evidence revealed that (1) Percy Montes purchased the truck solely for use by Primo's Landscaping, (2) the truck was used exclusively by Primo's Landscaping, (3) it was serviced by the one of Primo's Landscaping's employees, and (4) it was garaged on the premises of Primo's Landscaping. Moreover, Percy Montes personally received no benefit from making the truck available to Primo's Landscaping. Under these circumstances, the mere fact that Percy Montes had not completed the transfer of ownership of the truck to Primo's Landscaping when the accident occurred is not sufficient to permit a finding that Percy Montes was acting outside the scope of his employment in providing the truck to Primo's Landscaping.

The plaintiff relies on *Costanzo* v. *Mackler*, 34 Misc. 2d 188, 227 N.Y.S.2d 750, aff'd mem., 17 App. Div. 2d 948, 233 N.Y.S.2d 1016 (1962), to support his claim that Percy Montes' conduct places him outside the protection of the coworker immunity established under § 29 (6) of New York's Workers' Compensation Law. We disagree that *Costanzo* compels the conclusion that Percy Montes was not entitled to judgment as a matter of law on the plaintiff's claim.

In *Costanzo*, the plaintiff, Frank Costanzo, was injured in the course of his employment when the floorboard of a truck in which he was a passenger came loose and struck him, causing him to suffer injuries.

Id., 189. The truck was owned by the defendant, Sol Mackler, a mechanic who worked for the same employer as Costanzo. Id., 188–89. Costanzo brought an action against Mackler, who raised the special defense that Constanzo's exclusive remedy was workers' compensation benefits. Id., 189. The evidence established that Mackler had rented the truck to his employer on a daily basis but paid for gasoline, oil, insurance, repairs and all other incidental expenses pertaining to ownership of the truck. Id. Without any analysis, the trial court granted Costanzo's motion to strike Mackler's special defense, concluding: "Clearly, [§ 29 (6) of New York's] Workmen's Compensation Law . . . is inapplicable. The alleged tort charged of [Mackler] is independent of and not related to the common employment of both . . . . The injection of workmen's compensation under the circumstances would tend to prejudice a fair trial of the action." (Citation omitted.) Id. The Appellate Division affirmed the trial court without opinion. *Costanzo* v. *Mackler*, supra, 17 App. Div. 2d 948.

The plaintiff asserts that we should be guided by the conclusion of the court in *Costanzo* because that case and the present case present similar factual scenarios. Contrary to the plaintiff's claim, this case is distinguishable from *Costanzo* on its facts. In *Costanzo*, Mackler entered into a rental agreement with his employer from which he benefited financially. See *Costanzo* v. *Mackler*, supra, 34 Misc. 2d 189. By virtue of his arrangement with his employer, pursuant to which he also maintained and repaired the truck, Mackler never relinquished control of the vehicle. See id. In the present case, Percy Montes provided the truck to Primo's Landscaping immediately after he purchased it without any anticipation or expectation of personal benefit. Furthermore, Percy Montes never sought or intended to maintain possession or control of the truck, which, at all times, was used exclusively by Primo's Landscaping. In fact, Percy Montes

intended to transfer ownership of the truck to Primo's Landscaping. We therefore conclude that the plaintiff has failed to allege facts sufficient to permit a finding that Percy Montes was acting outside the scope of his employment as an officer of Primo's Landscaping when he purchased the truck and promptly relinquished it to Primo's Landscaping, without remuneration, for its exclusive use.

The judgment is affirmed.

In this opinion the other justices concurred.