DONNA K. BARON, EXECUTRIX (ESTATE OF
ANDREW E. BARON) *v.* GENLYTE
THOMAS GROUP, LLC, ET AL.
(AC 32636)

DiPentima, C. J., and Gruendel and Bear, Js.

Argued November 8, 2011—officially released January 3, 2012

*Guy L. DePaul*, for the appellant (plaintiff).

*Jason M. Dodge*, for the appellees (defendants).

*Opinion*

GRUENDEL, J. The plaintiff, Donna K. Baron, executrix of the estate of Andrew E. Baron,[1] appeals from the decision of the workers' compensation review board (board) affirming the decision of the workers' compensation commissioner for the seventh district (commissioner), which concluded that Connecticut law did not apply to her claim for workers' compensation benefits. We affirm the decision of the board.

---

[1] The plaintiff is the widow of the decedent.

Relevant to this appeal are the following facts found by the commissioner. On his date of injury, the decedent was employed as an " 'outside salesman' " by the defendant Lightolier, a division of Genlyte Thomas Group, LLC, which manufactures lighting fixtures and related products.[2] The decedent had entered into an employment contract with the defendant at its headquarters in New Jersey approximately seventeen years prior to the date of injury. As a traveling salesman, the decedent's sales territory consisted of the New York counties of Westchester, Rockland and Putnam. In addition, he had one client located in New Jersey. The defendant held sales meetings at its headquarters in Union, New Jersey, three times per month, which the decedent attended. On the morning of August 4, 2005, the decedent sustained injuries in a motor vehicle accident on the Saw Mill River Parkway in New York while en route to a sales meeting at the defendant's headquarters. The decedent died five months later and the plaintiff subsequently filed a claim for workers' compensation benefits on behalf of his estate.[3]

Although the decedent resided in Ridgefield, he never had any sales territory in Connecticut. He was discouraged from pursuing clients in Connecticut, as the state was the sales territory of other salespeople. Despite that restriction, the decedent gratuitously made a small number of personal visits to the Connecticut stores of some of his New York customers. The defendant neither required nor was aware of those visits by the decedent.

To facilitate the traveling nature of his employment, the defendant made cubicles and telephones available

---

[2] Named as defendants in this matter are Genlyte Thomas Group, LLC, Lightolier and Travelers Property and Casualty. For convenience, we refer to Lightolier as the defendant in this appeal.

[3] The commissioner found that "[w]hether and to what extent [the decedent] died of causes related to his August 4, 2005 motor vehicle accident . . . is not before the commissioner . . . in this proceeding."

to the decedent at its New Jersey headquarters. In addition, the defendant issued him a portable laptop computer and a corporate e-mail address. It likewise issued the decedent a cell phone with a New York number to avoid incurring long distance charges for either the decedent or his customers, as his sales territory was almost exclusively in New York.

The decedent did not occupy a desk job. Nevertheless, when not on the road, the decedent often elected to work in the basement of his residence in Ridgefield. That makeshift office included a desk and chair owned by the decedent, the laptop computer and cell phone furnished by the defendant and various product catalogs, trade show banners and files. It also included a copier, a facsimile machine and certain cabinets, the ownership of which was unclear. The decedent's use of his basement office was for his own personal convenience and not at the defendant's behest or for its convenience. Indeed, the decedent frequently used both his residential telephone and his personal computer for work-related matters despite being provided the laptop and cell phone by the defendant. Pursuant to the defendant's written travel policy, reimbursement for outside salespeople was not permitted for their travels from home to their first sales call of the day or from the last sales call of the day to home. Rather, it was deemed nonreimbursable commuting travel. Moreover, the plaintiff introduced no evidence indicating that the decedent ever claimed his residence as a home office for tax purposes. The commissioner thus found that the decedent's "home was not the 'place of the employment relationship.'"

In light of the foregoing, the commissioner determined that the plaintiff failed to establish a significant relationship between the state of Connecticut and either the employment contract or the employment relationship. Accordingly, she concluded that Connecticut law

did not apply to the plaintiff's claim for workers' compensation benefits.[4] The plaintiff thereafter filed a motion to correct the findings of the commissioner, which was denied. On July 29, 2009, the plaintiff filed a petition for review of the commissioner's decision with the board. A hearing was held on February 26, 2010.[5] In its subsequent decision affirming the decision of the commissioner, the board concurred with her conclusion that the plaintiff failed to establish a significant relationship between the state of Connecticut and either the employment contract or the employment relationship. From that decision, the plaintiff now appeals.

The plaintiff's principal claim is that the board improperly affirmed the decision of the commissioner that Connecticut law did not apply to her claim for workers' compensation benefits.[6] Specifically, the plaintiff contends that the commissioner improperly determined that she failed to establish a significant

---

[4] Although the commissioner viewed the issue of whether Connecticut law applied to the plaintiff's claim as one implicating subject matter jurisdiction, our Supreme Court has explained that it "properly is categorized as a question of conflict of laws." *Burse* v. *American International Airways, Inc.*, 262 Conn. 31, 37–38, 808 A.2d 672 (2002). We thus treat the commissioner's dismissal of the plaintiff's claim more properly as a denial thereof. We further note that the record in the present case is silent as to whether the plaintiff pursued a claim for workers' compensation benefits in either New York or New Jersey.

[5] The record before us does not contain a transcript of the February 26, 2010 proceeding.

[6] The plaintiff also alleges that the board improperly affirmed the denial of her motion to correct by the commissioner, arguing that the commissioner failed to incorporate certain allegedly undisputed facts into her decision. That claim is without merit. As this court recently observed, "[w]e will not change the finding of the commissioner unless the record discloses that the finding includes facts found without evidence or fails to include material facts which are admitted or undisputed. . . . It [is] the commissioner's function to find the facts and determine the credibility of witnesses . . . and a fact is not admitted or undisputed merely because it is uncontradicted. . . . A material fact is one that will affect the outcome of the case. . . . Thus, a motion to correct is properly denied when the additional findings sought by the movant would not change the outcome of the case." (Citation omitted; internal quotation marks omitted.) *Testone* v. *C. R. Gibson Co.*,

relationship between Connecticut and the decedent's employment relationship with the defendant. We disagree.

At the outset, we note that "Connecticut's Workers' Compensation Act (act), General Statutes § 31-275 et seq., is the exclusive remedy for injuries sustained by an employee 'arising out of and in the course of his employment. . . .' General Statutes § 31-284 (a). Under the act's strict liability provisions, workers are compensated without regard to fault. In return for a relatively low burden of proof and expeditious recovery, employees relinquish their right to any common-law tort claim for their injuries. . . . Generally, then, all rights and claims between employers and employees, or their representatives or dependents, arising out of personal injury or death sustained in the course of employment are abolished as a result of the act's exclusivity bar." (Citation omitted.) *Johnson* v. *Atkinson*, 283 Conn. 243, 251, 926 A.2d 656 (2007), overruled in part on other grounds by *Jaiguay* v. *Vasquez*, 287 Conn. 323, 348, 948 A.2d 955 (2008).

"The principles that govern our standard of review in workers' compensation appeals are well established. . . . The board sits as an appellate tribunal reviewing the decision of the commissioner. . . . [T]he review . . . of an appeal from the commissioner is not a de novo hearing of the facts. . . . [T]he power and duty of determining the facts rests on the commissioner . . . . [T]he commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses . . . . Where the subordinate facts allow for diverse inferences, the commissioner's selection of the inference to be drawn must stand unless it is based on an

114 Conn. App. 210, 222, 969 A.2d 179, cert. denied, 292 Conn. 914, 973 A.2d 663 (2009). Because the proposed findings would not affect the outcome of the case, the board properly affirmed the denial of her motion to correct.

incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . .

"This court's review of decisions of the board is similarly limited. . . . The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [W]e must interpret [the commissioner's finding] with the goal of sustaining that conclusion in light of all of the other supporting evidence. . . . Once the commissioner makes a factual finding, [we are] bound by that finding if there is evidence in the record to support it." (Citations omitted; internal quotation marks omitted.) *Williams* v. *State*, 124 Conn. App. 759, 763–64, 7 A.3d 385 (2010).

It is axiomatic that, to be eligible for workers' compensation benefits, a claimant must establish a compensable injury under the act. As our Supreme Court has observed, "[p]roblems arise . . . when employment is not necessarily fixed in Connecticut. The oftentimes transient nature of modern employment makes it difficult for states to determine which claims are compensable and which are not." *Burse* v. *American International Airways, Inc.*, 262 Conn. 31, 37, 808 A.2d 672 (2002). This is such a case.

In *Cleveland* v. *U.S. Printing Ink, Inc.*, 218 Conn. 181, 195, 588 A.2d 194 (1991), the Supreme Court articulated a three part test to determine when Connecticut workers' compensation law applies. That test permits the commissioner to apply Connecticut law when Connecticut is: (1) the place of the injury; (2) the place of the employment contract; or (3) the place of the employment relation. Id. The court subsequently refined that test in *Burse* v. *American International Airways, Inc.*, supra, 262 Conn. 31. It held that "[t]he

facts of [*Cleveland*] did not require us to elaborate on what we meant by 'the place of' in connection with the employment contract or employment relation, and we subsequently have not revisited the choice of law issue in workers' compensation claims. After reviewing the sources on which we relied in *Cleveland*, we now clarify that this test requires, at a minimum, a showing of a *significant* relationship between Connecticut and either the employment contract or the employment relationship."[7] (Emphasis in original.) Id., 38–39. With that standard in mind, we turn our attention to the present case.

It is undisputed that the place of the decedent's injury was in New York and that the decedent entered into his employment contract in New Jersey.[8] Accordingly,

[7] In her appellate brief, the plaintiff argues that our Supreme Court further refined the test set forth in *Cleveland* and *Burse* in *Jaiguay* v. *Vasquez*, supra, 287 Conn. 323. She is mistaken. That case involved a tort claim rather than a workers' compensation claim, a distinction the court repeatedly emphasized. See id., 331 ("[t]his case presents an appropriate opportunity for us to reconsider and clarify the choice of law approach that is most appropriate when, as in the present case, a plaintiff who has been awarded workers' compensation benefits brings a common-law tort action seeking damages for injuries sustained as a result of a coworker's allegedly negligent operation of a motor vehicle"); id., 345 (concluding that three-pronged test developed in *Cleveland* and *Burse* "applies only when the case involves a claim for workers' compensation benefits and not when, as in the present case, the case involves a tort claim"); id., 348 (overruling holding of *Johnson* v. *Atkinson*, supra, 283 Conn. 243, that "the same choice of law analysis applies to tort claims and claims for workers' compensation benefits"). Significantly, the court in *Jaiguay* stated that "[w]e have no reason to disturb [the test set forth in *Cleveland* and refined in *Burse*] insofar as it applies to cases, like *Cleveland,* in which the choice of law issue presented is whether a claimant seeking workers' compensation benefits in this state is entitled to such benefits under this state's Workers' Compensation Act." *Jaiguay* v. *Vasquez*, supra, 346–47.

[8] In articulating the three-pronged test, the court in *Cleveland* expressly adopted the choice of law rule recommended by the National Commission on State Workmen's Compensation Laws and Professor Arthur Larson. *Cleveland* v. *U.S. Printing Ink, Inc.*, supra, 218 Conn. 192–93. We note that those authorities described the second prong of that test as "the place of hiring" rather than the place of the employment contract. Id., 192.

the only issue before us is whether the plaintiff established a significant relationship between Connecticut and the employment relationship. We conclude that she did not.

The plaintiff presents a twofold basis for her position that a significant relationship existed between Connecticut and the decedent's employment relationship with the defendant. She primarily claims that the decedent maintained a home office at his residence in Ridgefield and secondarily contends that the decedent at times worked in Connecticut "when required to travel to Connecticut customers who had purchased [the defendant's] product from [him] in New York and then developed problems with the product . . . ." Those claims are equally unavailing.

With respect to the home office, it is noteworthy that the commissioner found that although the decedent spent time working from his basement office, his was not a " 'desk job.' " Rather, he was a "traveling salesman." The commissioner credited the testimony of Gerard Blandina, the decedent's supervisor, that the defendant did not direct the decedent to establish an office at his residence, or to reside in Connecticut for that matter. See *Burse* v. *American International Airways, Inc.*, supra, 262 Conn. 40 (plaintiff's residence in Connecticut "bears little weight in [the significant relationship] determination, given that [the employer] did not require the plaintiff to live in Connecticut and that his employment did not necessitate such residency"). The commissioner found that the decedent's use of his basement office was done "for his own personal convenience and not at the [defendant's] behest or for [its] convenience . . . ." That finding is supported by the evidence in the record before us. Though it is undisputed that the decedent elected to work from his basement office on a regular basis, there is nothing

in the record to indicate that his employment relationship with the defendant so required. In addition, the plaintiff presented no evidence that the decedent claimed his residence as a home office for tax purposes or received reimbursement for travel to or from sales calls to his residence. In sum, the decision of a traveling salesman to perform certain aspects of his vocation in his home as a matter of convenience simply is insufficient to establish a significant relationship between Connecticut and his employment relationship.

The plaintiff also claims that the decedent worked in Connecticut "when required to travel to Connecticut customers who had purchased [the defendant's] product from [him] in New York and then developed problems with the product . . . ." The evidence regarding such work is scant. The decedent did not have any sales territory in Connecticut and he was discouraged from pursuing clients in Connecticut. During the hearing before the commissioner, Blandina was questioned by the plaintiff's counsel about a scenario in which one of the decedent's customers in New York purchased goods for a store located in Connecticut. In response, Blandina testified that "[i]f we know that that took place, we're supposed to compensate our Connecticut sales office some percentage. The company policy is actually 15 percent. It's called destination credit. And a destination credit is supposed to cover service. If there's a problem on the job it's supposed to—not always. Do we just throw it off on the other office? Sure, [the decedent] would have gotten involved multiple times, I'm sure. If a customer had a problem with one of our products in Connecticut and he couldn't from the main office respond quickly, I'm sure [the decedent] was an aggressive guy. He would have gone after that." From that evidence, the commissioner found that the decedent "gratuitously made a small number of personal visits to the Connecticut stores of the customers of some of

his New York customers . . . ." Evidence that an employee occasionally, but infrequently, conducted business in this state supports the conclusion that a significant relationship does not exist between Connecticut and the employment relationship. See *Burse* v. *American International Airways, Inc.*, supra, 262 Conn. 40.

In her hearing testimony, the plaintiff stated that the decedent on occasion would "go to New Canaan and Greenwich, mostly for jobs and job quotes." She testified that "[i]f there were problems with lighting, he's to go to the job site. And a lot of those job sites were in the Greenwich, New Canaan, Darien, Stamford area because the customers were on the border. Like Port Chester and a lot of their customers were in Connecticut. . . . He would get calls several times a month. Whenever there was an issue of lighting or there was an architect that was—a lot of times what they did is they transferred—if an architect specified a certain name brand, he would go with the architect to see if he could transfer it or convert it." In her decision, the commissioner chose not to credit that testimony, concluding that although the plaintiff "alleges that [the decedent] would visit customers of his sales clients to address problems and/or complaints," no evidence existed indicating that she "had any personal knowledge of [the decedent's] whereabouts during the course of the work week . . . ." The commissioner, as finder of fact, is the sole arbiter of credibility; *Samaoya* v. *Gallagher*, 102 Conn. App. 670, 673–74, 926 A.2d 1052 (2007); and it is within the discretion of the commissioner "to accept some, all or none of the plaintiff's testimony." *Gibbons* v. *United Technologies Corp.*, 63 Conn. App. 482, 487, 777 A.2d 688, cert. denied, 257 Conn. 905, 777 A.2d 193 (2001). We will not disturb the commissioner's assessment of the plaintiff's testimony in that respect. Furthermore, the record substantiates

the commissioner's findings that the defendant did not direct the decedent to assist his customers at stores located in Connecticut and that the defendant was not aware that the decedent had done so on occasion.

The findings of the commissioner, which are supported in the record before us, reveal that the decedent was a traveling salesman without a desk job and whose sales territory was almost exclusively in New York. He had no sales territory in Connecticut and was discouraged from pursuing clients in Connecticut. Although the decedent utilized an office in the basement of his residence, he did so for his own personal convenience and not at the defendant's behest. He further "gratuitously made a small number of personal visits to the Connecticut stores of the customers of some of his New York customers" on his own initiative, visits which were not required by or known to the defendant. To paraphrase the words of our Supreme Court, these contacts indicate that Connecticut had a peripheral relationship to the employment between the decedent and the defendant. *Burse* v. *American International Airways, Inc.,* supra, 262 Conn. 40. We conclude that the plaintiff has not sustained her burden of establishing a significant relationship between Connecticut and the decedent's employment relationship with the defendant. Accordingly, the commissioner properly determined that Connecticut law did not apply to her claim for workers' compensation benefits.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.