ALEX SPRINGER ET AL. *v.* J.B. HUNT
TRANSPORT, INC., ET AL.
(AC 33998)

Beach, Sheldon and Bishop, Js.

806

Argued January 16—officially released September 24, 2013

*Andrew J. Hern*, with whom was *Meryl A. Spat*, for the appellant (plaintiff Donna Springer).

*Gerald V. Davino II*, for the appellees (defendants).

*Opinion*

SHELDON, J. This is an appeal by the plaintiff Donna Springer,[1] of Norfolk, Connecticut, from the decision of the Workers' Compensation Review Board (review board), affirming the denial by the workers' compensation commissioner for the fifth district (commissioner) of her claim for dependent's benefits under General Statutes § 31-306[2] of the Workers' Compensation Act (act); General Statutes § 31-275 et seq.; in connection with the work related[3] death of her husband, Alex

---

[1] Donna Springer brought this claim individually, as the dependent spouse of the decedent, Alex Springer, and in a representative capacity, on behalf of the decedent's estate. We will refer to Donna Springer as the plaintiff.

[2] General Statutes § 31-306 (a) provides in relevant part: "Compensation shall be paid to dependents on account of death resulting from an accident arising out of and in the course of employment or from an occupational disease . . . ."

[3] It is undisputed that the decedent's death arose out of and in the course of his employment with the defendant.

Springer (decedent), while driving through West Virginia for his employer, the defendant[4] J.B. Hunt Transport, Inc.[5] The commissioner, citing *Cleveland* v. *U.S. Printing Ink, Inc.*, 218 Conn. 181, 195, 588 A.2d 194 (1991), and its progèny, held that the Workers' Compensation Commission (commission) lacked subject matter jurisdiction over the plaintiff's claim for benefits because, inter alia, Connecticut was not the place of the decedent's employment relation with the defendant.[6]

On appeal, as before the review board, the plaintiff claims that the commissioner erred in deciding that Connecticut was not the place of the employment relation between her decedent and the defendant. She thus argues that the review board erred in affirming the commissioner's decision to that effect in deference to the commissioner's factual findings. For the following reasons, we agree with the plaintiff that the commissioner misapplied the "place of the employment relation" test of *Cleveland* in denying her claim for dependent's benefits, and thus we reverse the review board's affirmance of that denial and remand this case for further proceedings on the plaintiff's claim.

I

The record discloses the following undisputed facts and procedural history. The decedent was a resident

---

[4] AIG Claims Services, Inc., the employer's insurer, is also a defendant. For simplicity, we refer herein to J.B. Hunt Transport, Inc., as the defendant.

[5] The defendant has its principal place of business in Arkansas and was incorporated in Georgia.

[6] A claimant can recover benefits under Connecticut's workers' compensation laws when "Connecticut is the place of the injury, the place of the employment contract or the place of the employment relation." *Cleveland* v. *U.S. Printing Ink, Inc.*, supra, 218 Conn. 195. The "place of the employment relation" prong requires that a claimant must demonstrate, at a minimum, a sufficiently significant relationship between Connecticut and the employee's relationship with his employer. *Jaiguay* v. *Vasquez*, 287 Conn. 323, 346, 948 A.2d 955 (2008); *Burse* v. *American International Airways, Inc.*, 262 Conn. 31, 38–39, 808 A.2d 672 (2002); see part III of this opinion.

of Connecticut who worked as a truck driver under a Connecticut commercial driver's license. In 2004, the decedent applied for a position as a truck driver with the defendant by contacting it over the Internet from his home in Connecticut. A representative of the defendant responded to the defendant's application by calling him at home to ask him a series of preliminary questions. During that call, the decedent authorized the defendant to conduct a background check as to his driving history. After passing the background check, the decedent was invited to attend a three day orientation at the defendant's New Jersey orientation facility, where he passed a road test and completed a written application for employment. On April 3, 2004, after successfully completing the orientation and passing both a Department of Transportation physical examination and a preemployment drug screening test, the decedent began his employment as a truck driver for the defendant, retroactive to the first day of his orientation.

As a newly hired driver, the decedent was placed in a dedicated contract services (DCS) position. "DCS positions involve a specific contract with a specific customer at specific locations to provide transportation needs for that location. Drivers working on dedicated accounts only make deliveries for the dedicated account out of the assigned dispatch facility."[7] The decedent was assigned to a DCS account for Family Dollar Tree, which maintained a dispatch facility at its distribution center in Front Royal, Virginia.

In accordance with the defendant's policy, the decedent began each new trip to make deliveries to Family

---

[7] Alternatively, drivers may select an over the road position, in which they drive "nationwide . . . covering forty-eight states with random fleet and random customers . . . managed and dispatched out of Arkansas, and can be in any state at any time."

Dollar Tree stores at the Front Royal distribution center.[8] After his trailer was loaded at that location, he departed to make deliveries at specific times and places, as directed by his dispatch manager at the distribution center. At the end of each trip, after making his final delivery, the decedent returned with his empty trailer to the distribution center in Front Royal to await the reloading of his trailer and the start of his next trip. When he returned to Front Royal during the week, he slept overnight in his cab. When, however, he returned from a trip at the end of the week, he typically waited in Front Royal until the trailer was reloaded on Saturday or Sunday, then drove home to Connecticut for the rest of the weekend before heading out to make his first delivery on the following Monday.[9] The decedent was paid for his work on the basis of the deliveries he made and the miles he drove for his employer. He was not reimbursed, however, for any expenses he incurred either to drive his loaded tractor trailer home for the weekend or to park it on a private lot near his home while he was there.[10]

By the date of his death on June 12, 2004, the decedent had worked for the defendant for approximately ten weeks. During that time, he worked all or part of fifty-one days, on five of which he made deliveries to Family Dollar Tree stores in Connecticut. Twelve of the decedent's seventy-two deliveries in that period were to Family Dollar Tree stores in Connecticut.

At the hearing before the commissioner, the plaintiff claimed that the commission had jurisdiction over her

[8] At the time of the decedent's fatal injury, the defendant did not maintain any dispatch facilities for its Family Dollar Tree accounts in Connecticut.

[9] Although the decedent maintained his permanent residence in Norfolk during the duration of his employment with the defendant, neither the defendant, as a general matter, nor the decedent's specific DCS account required that the decedent live in Connecticut.

[10] Although the decedent's compensation was generally limited to payments for loads that he unloaded and miles that he traveled, he also received hourly detention pay when a customer detained him.

claim for benefits in connection with the decedent's death because the relationship between Connecticut and the decedent's employment relation with the defendant was sufficiently significant to warrant awarding her such benefits under § 31-306. The plaintiff argued, under *Cleveland* and its progeny, that in deciding if the commission has jurisdiction over a claim for workers' compensation benefits based upon the significance of the relationship between an injured employee's employment relation with his employer and this state, the commissioner must consider both the nature of the employee's work for the employer and the basis upon which the employer compensated the employee for such work. The question presented, she argued, is whether the level or extent of the employee's work in Connecticut or on behalf of the employer's customers in Connecticut was so significant as to give this state an interest in awarding benefits in connection with his injuries under the act. Specifically, the plaintiff claimed that, on the basis of the decedent's miles and hours driven during trips, back and forth from Virginia, to and from Connecticut destinations and other destinations that required him to pass, back and forth, through Connecticut, the state had a sufficiently significant relationship to or interest in the decedent's employment relation with the defendant to warrant awarding her dependent's benefits under Connecticut law.

The defendant, by contrast, argued that the commission did not have jurisdiction over the plaintiff's claim because the defendant did not conduct sufficient business in Connecticut to warrant awarding workers' compensation benefits to any of its injured employees or their dependents under Connecticut law and, in any event, that Virginia, from which the plaintiff was already collecting survivor's benefits, had jurisdiction over the plaintiff's decedent's injury under the place of the employment relation test of *Cleveland* because it was

the state where all of his trips to make deliveries started and ended and the state from which all of his work activities were directed and supervised.

As for the defendant's own business contacts with Connecticut, the defendant insisted that such contacts were minimal because of its incorporation and maintenance of its business headquarters elsewhere, its lack of special service or training facilities in Connecticut and the small percentage of its overall business in the United States and Canada that was conducted in Connecticut during the year of the decedent's death. As for the decedent's personal employment contacts with Connecticut in the course of his employment by the defendant, the defendant focused exclusively on the number of deliveries the decedent made to stores in Connecticut while working for it (twelve of seventy-two total deliveries) and the number of days he spent making those deliveries (five of fifty-one working days). The defendant made no argument with respect to the total miles the decedent drove to, through and back to Virginia from Connecticut during the ten weeks of his employment compared to all of the miles he drove elsewhere or for other purposes in that time frame.

Not persuaded by the plaintiff's argument, the commissioner issued a decision on June 30, 2010, denying the plaintiff's claim, based, inter alia, upon the finding that Connecticut was not the place of the decedent's employment relation with the defendant.[11]

In reaching her conclusion that Connecticut was not the place of the employment relation between the plaintiff's decedent and the defendant, the commissioner made the following findings of fact. As for the decedent's employment contacts with the state, the commissioner found only that, in the course of his work for

___

[11] The commissioner also found that Connecticut was not the place of the injury or the employment contract. See *Cleveland* v. *U.S. Printing Ink, Inc.*, supra, 218 Conn. 195; see footnote 13 of this opinion.

the defendant, the decedent never picked up any merchandise in Connecticut and that he only made deliveries to Family Dollar Tree stores in Connecticut on five of the fifty-one days he worked. Hence, although the commissioner concluded, in summary fashion, that she "d[id] not find the position and reasoning of the [plaintiff's] attorney persuasive regarding the total number of miles and corresponding percentages he calculated for [the decedent's] travel to Connecticut and through Connecticut," she made no findings as to the facts upon which that determination was based and offered no explanation for her rejection of the plaintiff's attorney's position.

As for the relationship between the defendant and the state of Connecticut, apart and away from the decedent's employment contacts with this state in the course of his employment by the defendant, the commissioner found that the defendant is a Georgia corporation with its principal place of business in Arkansas; the defendant did not maintain any orientation facilities, maintenance and repair facilities or dispatch facilities for Family Dollar Tree stores in Connecticut; according to tax returns filed with the state of Connecticut in 2004, the defendant's revenue generated from business inside the state of Connecticut was less than 1 percent of its overall revenue for the year; and according to the defendant's mileage and fuel use records, the total miles driven by all of its vehicles in Connecticut in 2004 constituted less than 1 percent of the total miles driven by all of its vehicles in the United States and Canada during that year. On the basis of those findings, the commissioner concluded, in summary fashion: "Based on the totality of the evidence submitted and review of the standard set forth in *Cleveland* v. *U.S. Printing Ink, Inc.*, [supra, 218 Conn. 181]; *Burse* v. *American International Airways, Inc.*, 262 Conn. 31 [808 A.2d 672] (2002), and *Jaiguay* v. *Vasquez*, 287 Conn. 323 [948 A.2d 955]

(2008), I find the [plaintiff] . . . has failed to meet her burden [of proving] that a significant relationship existed between her late husband's employment and the state of Connecticut. Therefore, the employment relationship cannot be a basis for invoking Connecticut workers' compensation jurisdiction."

On August 12, 2010, the plaintiff filed a motion to correct, seeking forty-four corrections to the commissioner's findings. Notably, the plaintiff sought to have the commissioner add to her findings the specific number of miles her decedent had driven on trips to and from Connecticut destinations to make and return from making deliveries on behalf of the defendant, as well as the number of miles driven by the decedent on other trips for the defendant in which he traveled back and forth through Connecticut to make or return from making deliveries in other states. In addition, the plaintiff sought to have the commissioner delete from her findings, inter alia, the facts that the defendant's "revenue generated from business inside the state of Connecticut was less than 1 . . . percent of its overall revenue for [2004]"; (emphasis omitted); and that "the total miles driven by all the [defendant's] vehicles in Connecticut in 2004 were less than 1 . . . percent as compared to the number of miles driven by the [defendant's] vehicles in all other states and Canadian provinces in 2004." The commissioner denied these requests without explanation.

The plaintiff subsequently appealed from the commissioner's decision to the review board pursuant to General Statutes § 31-301 (a).[12] On appeal to the review

[12] General Statutes § 31-301 (a) provides in relevant part: "At any time within twenty days after entry of an award by the commissioner, after a decision of the commissioner upon a motion or after an order by the commissioner . . . either party may appeal therefrom to the Compensation Review Board . . . ."

board, the plaintiff claimed, inter alia, that the decedent's total miles driven to, through and back to Virginia from Connecticut while working for the defendant demonstrated that there was a sufficiently significant relationship between Connecticut and the decedent's employment relation with the defendant to warrant awarding her dependent's benefits under Connecticut's workers' compensation law in connection with the decedent's death. The review board affirmed the commissioner's conclusion that no award of benefits could be made in Connecticut because, inter alia, Connecticut was not the place of the employment relation between the decedent and the defendant. The review board concluded, also in summary fashion, that the commissioner's decision on that issue was a reasonable finding of fact, to which it was obliged to defer. The plaintiff now appeals from that decision. Additional facts will be provided as necessary.

## II

"The principles that govern our standard of review in workers' compensation appeals are well established. . . . The board sits as an appellate tribunal reviewing the decision of the commissioner. . . . [T]he review . . . of an appeal from the commissioner is not a de novo hearing of the facts. . . . [T]he power and duty of determining the facts rests on the commissioner . . . . [T]he commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses . . . . Where the subordinate facts allow for [divers] inferences, the commissioner's selection of the inference to be drawn must stand unless it is based on an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . .

"This court's review of decisions of the board is similarly limited. . . . The conclusions drawn by [the commissioner] from the facts found must stand *unless they*

*result from an incorrect application of the law to the subordinate facts* or from an inference illegally or unreasonably drawn from them. . . . [W]e must interpret [the commissioner's finding] with the goal of sustaining that conclusion in light of all of the other supporting evidence. . . . Once the commissioner makes a factual finding, [we are] bound by that finding if there is evidence in the record to support it." (Citations omitted; emphasis added; internal quotation marks omitted.) *Williams* v. *State,* 124 Conn. App. 759, 763–64, 7 A.3d 385 (2010). "[T]he decision of the [board] must be correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed." (Internal quotation marks omitted.) *Mele* v. *Hartford,* 118 Conn. App. 104, 108, 983 A.2d 277 (2009).

The *Cleveland* case established as a general rule that the commission can exercise subject matter jurisdiction over a claim for benefits under the act when "Connecticut is the place of the injury,[13] the place of the employment contract or the place of the employment relation."[14] *Cleveland* v. *U.S. Printing Ink, Inc.,* supra,

[13] Following the Supreme Court's opinion in *Cleveland,* however, the legislature signaled its disapproval of the court's conclusion that a plaintiff's injury in this state was sufficient to satisfy the *first prong* of the three part test adopted in that case. See Public Acts 1993, No. 93-228, § 1. The legislature amended the act to exclude from the definition of employee "[a]ny person who is not a resident of this state but is injured in this state during the course of his employment, unless such person (I) works for an employer who has a place of employment or a business facility located in this state at which such person spends at least fifty per cent of his employment time, or (II) works for an employer pursuant to an employment contract to be performed primarily in this state." General Statutes § 31-275 (9) (B) (vi). The legislature, therefore, limited the universe of employees who are entitled to Connecticut benefits when seeking compensation under the first prong of the *Cleveland* test.

[14] The parties agree that West Virginia was the place of the decedent's injury and New Jersey was the place of the decedent's employment contract with the defendant.

218 Conn. 195. Later, in *Burse* v. *American International Airways, Inc.*, supra, 262 Conn. 38, our Supreme Court clarified that "the place of the employment relation," as that term is used in *Cleveland* to establish an injured worker's or his dependent's right to recover workers' compensation benefits under Connecticut law, does not require proof that Connecticut is or was the only place of the injured worker's employment relation with his employer. Such a rule would be unfair to workers who perform work in multiple states by making them ineligible for workers' compensation benefits anywhere and would potentially harm the financial interests of every state where such workers live and/or work by requiring such states to support the workers and their dependents in the wake of disabling work related injuries for which they are not compensated. Accordingly, the court in *Burse* ruled that the "place of the employment relation" prong of the *Cleveland* test "requires, at a minimum, a showing of a *significant* relationship between Connecticut and . . . the employment relationship." (Emphasis in original.) Id., 38–39.

Consistent with its latter clarification of *Cleveland*, the Supreme Court more recently explained, in *Jaiguay* v. *Vasquez*, supra, 287 Conn. 346, that "the choice of law question posed by a claim for workers' compensation benefits in this state is not whether Connecticut has the *most* significant relationship to or interest in the matter but, rather, whether Connecticut's relationship or interest is sufficiently significant to warrant an award of benefits under its workers' compensation statutes." (Emphasis altered.) "The purpose of the [workers'] compensation law has always been to provide compensation for an injury arising out of and in the course of the employment regardless of fault, and the statutes are to be broadly construed to effectuate that purpose. . . . The underlying objective is to provide for the

[worker] and those dependent on him." (Citation omitted.) *Klapproth* v. *Turner*, 156 Conn. 276, 279, 240 A.2d 886 (1968). It has thus been held that the act is a remedial statute that "should be construed generously to accomplish its purpose. . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation." (Citation omitted; internal quotation marks omitted.) *Blakeslee* v. *Platt Bros. & Co.*, 279 Conn. 239, 245, 902 A.2d 620 (2006). In light of this purpose, the rule of *Cleveland* and its progeny must be read broadly to permit the commission to exercise jurisdiction over a claim for workers' compensation benefits whenever our state's relationship to or interest in the injured employee's employment relation with his employer is sufficiently significant to give this state an interest in ensuring that he and his dependents are compensated for, and the state itself is not unduly burdened by uncompensated costs and expenses otherwise arising from, the employee's work related injuries.[15]

"The commissioner's conclusion, that Connecticut was not the place of the employment relation, drawn from the facts, must [therefore] stand unless it resulted from an incorrect application of the law to the facts or from an inference illegally or unreasonably drawn from those facts." *Gibson* v. *Keebler Co.*, 37 Conn. App. 392, 396, 655 A.2d 1172 (1995). Nevertheless, "[t]he finding in a compensation case should contain all the subordinate facts which are pertinent to the inquiry . . . . If a finding does not conform to these requirements, . . . neither the Superior Court nor this court is in a position

---

[15] According to Professor Arthur Larson, an advocate of the place of the employment relation test, the applicable law in a workers' compensation case is the law of the place of the employment relation because "the existence of the employer-employee relation within the state gives the state an interest in controlling the incidents of that relation, one of which incidents is the right to receive and the obligation to pay [workers'] compensation." 4 A. Larson, Workmen's Compensation Law (1976) § 87.40, p. 16-84.

to decide whether the award was correct and just or not. . . . To refuse to find the facts which a party seeks to have stated because the commissioner deems them unnecessary or immaterial is not ordinarily fair to the parties, the court, or the State and its officers. It is not fair to the parties because they are entitled to have found such proven facts as they deem it necessary to present to the court upon the appeal. . . . Cases under the [act] . . . are upon a different basis from actions between ordinary litigants." (Citations omitted; internal quotation marks omitted.) *McQuade* v. *Ashford,* 130 Conn. 478, 482, 35 A.2d 842 (1944).[16]

## III

The plaintiff advances two arguments in support of her claim that, as a matter of law, the commissioner improperly determined that there was not a sufficiently significant relationship between the decedent's employment relation with the defendant and Connecticut. First, and most importantly, the plaintiff claims that the commissioner abused her discretion by failing to "consider all aspects of [the decedent's] employment [that] support a relationship to Connecticut . . . ." Second, the plaintiff contends that, in reaching her determination that Connecticut was not the place of the employment relation, the commissioner improperly based her decision on factors that were irrelevant to Connecticut's relationship to the decedent's employment relation with the defendant. We agree.

As to her first claim, the plaintiff argues that the commissioner improperly "refused to credit factors [that] had a direct and cumulative bearing on the [decedent's] employment relationship to Connecticut, such as the miles and hours he drove to, from and through Connecticut . . . ." While there is no fixed, invariable

---

[16] See footnote 20 of this opinion.

standard by which to determine whether the relationship between Connecticut and an injured employee's employment relation with his employer is sufficiently significant to warrant granting workers' compensation benefits to him or his dependent in the event of a work related injury, our courts have adopted an approach to the resolution of that issue under which certain factors are routinely examined in the factual patterns of each case.

In *Burse* v. *American International Airways, Inc.*, supra, 262 Conn. 33, 39–40, for example, the plaintiff was a Connecticut resident who suffered a work related injury over the Midwest while working as an airline pilot for the defendant freight carrier based in Michigan that conducted nationwide operations but had only minimal contacts with Connecticut. In determining if the plaintiff had demonstrated the existence of a significant relationship between his employment relation with his employer and Connecticut, the court first examined the plaintiff's personal employment contacts with Connecticut during the course of his employment by the defendant freight carrier. On that score, it observed that such contacts were limited to "twelve flights that the plaintiff flew in and out of Bradley International Airport over the course of a *four year period*." (Emphasis added.) Id., 40. The court further noted that, although the plaintiff resided in Connecticut, where he maintained records of his travel expenses and flight patterns, his employer did not require him to reside or to maintain his travel expense records in this state. Id., 39. On the basis of these minimal contacts, the court concluded, under the place of the employment relation test of *Cleveland*, "that Connecticut had, at most, a peripheral relationship to the employment between the plaintiff and [the defendant freight carrier]." (Emphasis omitted.) Id., 40. That finding was confirmed, moreover, by

the employer's minimal business contacts with Connecticut, as demonstrated by its lack of personnel or offices in this state and the low percentage of its overall revenues generated by its in-state operations. Id., 39–40. These factors were relevant to the significance of the relationship between the plaintiff's employment relation with the defendant freight carrier and this state because the geographic scope of the plaintiff's assigned work was not limited to any particular territory or portion of the defendant freight carrier's business operations. See *Burse* v. *American International Airways, Inc.*, No. 3480, CRB 2-96-12 (November 7, 1997).

Similarly, in *Baron* v. *Genlyte Thomas Group, LLC*, 132 Conn. App. 794, 798–99, 34 A.3d 423, cert. denied, 303 Conn. 939, 37 A.3d 155 (2012), this court was called upon to determine if the plaintiff established a sufficiently significant relationship between Connecticut and the employment of her late husband to warrant awarding her dependent's benefits under the act. In support of the plaintiff's claim that Connecticut had such a sufficiently significant relationship to the defendant's employment relation with her deceased husband, a traveling salesman and resident of Connecticut, to warrant awarding her dependent's benefits under the Connecticut workers' compensation statutes, the plaintiff argued that (1) "the decedent maintained a home office at his residence in [Connecticut] and [(2)] the decedent at times worked in Connecticut when required to travel to Connecticut customers who had purchased [the defendant's] product from [him] in New York and then developed problems with the product . . . ." (Internal quotation marks omitted.) Id., 802.

Regarding the decedent's maintenance of a home office in Connecticut, to serve his own interests rather than those of his employer, the court in *Baron* concluded, simply, as follows: "[T]he decision of a traveling salesman to perform certain aspects of his vocation in

his home as a matter of convenience simply is insufficient to establish a significant relationship between Connecticut and his employment relationship." Id., 803. Similarly, regarding the decedent's self-motivated visits to his employer's Connecticut customers, the court held that, although the decedent "gratuitously made a small number of personal visits to the Connecticut stores of the customers of some of his New York customers on his own initiative . . . which were not required by or known to the defendant," such contacts indicated that Connecticut had merely "a peripheral relationship to the employment between the decedent and the defendant." (Internal quotation marks omitted.) Id., 805. Ultimately, the court in *Baron* held that the plaintiff had failed to establish a sufficiently significant relationship between Connecticut and the decedent's employment relation with his employer because his sales territory was almost exclusively limited to New York, he had no sales territory in Connecticut and he was discouraged by his employer from pursuing clients in Connecticut. Id.

The upshot of *Burse* and *Baron* is that the proper focus of the commissioner's inquiry as to whether there is a significant relationship between the state of Connecticut and the employment relation between an injured employee and his employer must be on the specific nature of the employee's work. This fact-based determination requires, inter alia, consideration of the purpose and location of the employee's job responsibilities. After clearly identifying those responsibilities and the places where and purposes for which the employee is assigned or authorized to perform them, the commissioner must determine whether the extent of the employee's work in Connecticut or on behalf of his employer's Connecticut clients constituted such a significant part of his overall work for the employer as to give Connecticut a significant interest in requiring his

employer to provide to him or his dependents benefits under Connecticut law in the event he was injured on the job. The commissioner's findings must, therefore, include all facts essential to understanding what portion of the employee's assigned or authorized work activities either took place in Connecticut or involved serving his employer's business interests in this state.[17]

Here, at the hearing before the commissioner, the plaintiff and the defendant utilized different methodologies to calculate the amount of time the decedent had spent working in Connecticut for purposes of determining whether Connecticut was the place of the decedent's employment relation with the defendant. In determining the significance of the decedent's employment contacts with Connecticut, the plaintiff argued that the commissioner should have "[applied] the number of times the decedent's truck route crossed through Connecticut on the way to other states, and the amount of mileage accumulated in other states to arrive at Connecticut locations in order to determine the level of activity the decedent had within the state of Connecticut." The plaintiff claimed that the decedent traveled a total of 16,785 miles during his employment with the defendant. Of those total miles, the plaintiff claimed that 4177

[17] We recognize that the place of an employee's supervision by his employer and the place from which the employer remunerates the employee for his work are relevant to this inquiry as well. As our Supreme Court made clear in *Jaiguay*, however, the commissioner must determine whether *Connecticut's* relationship to an employment relation is sufficiently significant to warrant an award of benefits. Here, then, the question is not whether the decedent's employment was located primarily in Virginia—where many of his employment-related activities occurred. Nor is the question whether certain of the decedent's employment activities other than the miles he drove in service to his employer occurred outside of Connecticut. Rather, the proper issue under *Cleveland* and its progeny is whether enough of the decedent's employment activities, as alleged by the plaintiff in her claim for dependent's benefits, either occurred in Connecticut or concerned the employer's business interests in Connecticut to warrant awarding her dependent's benefits in connection with her husband's work related death under the act.

(almost 25 percent) were traveled to make deliveries to Connecticut. Moreover, the plaintiff argued that the decedent completed many other trips in which he passed, back and forth, through Connecticut to make or return from making deliveries to Family Dollar Tree stores in Rhode Island, Massachusetts, Vermont and New Hampshire. In those trips, the plaintiff claimed that the decedent traveled an additional 5262 (approximately 31 percent) of his total miles. According to the plaintiff, these miles that the decedent drove "to, from and through Connecticut" (total Connecticut miles) accounted for 56 percent of the total miles he drove as an employee of the defendant.[18] In contrast, the defendant proposed that the proper focus of the commissioner's inquiry in determining the significance of the relationship between the decedent's employment relation with his employer and this state was "the actual number of deliveries the decedent made to Connecticut stores and the number of days he spent in Connecticut making those deliveries."

In reaching her conclusion that the plaintiff did not meet her burden of establishing the requisite nexus between the decedent's employment and Connecticut to warrant awarding her dependent's benefits under the act, the commissioner found, without explanation, that the plaintiff's position regarding the decedent's employment activities in Connecticut was not persuasive. Consequently, she neither calculated nor considered any portion of the decedent's total Connecticut miles in

---

[18] In her motion to correct, the plaintiff accurately stated that, in *Cleveland* v. *U.S. Printing Ink, Inc.*, supra, 218 Conn. 183, our Supreme Court noted that, in determining that the plaintiff employee "ha[d] enough significant contacts with this state and . . . therefore Connecticut [had] an interest in applying its statutes for the protection of working men injured within its borders"; (internal quotation marks omitted); the commissioner had found that, "between Connecticut deliveries and driving through the state, the plaintiff spent 35 to 40 percent of his employment time in Connecticut."

reaching her conclusion that the commission lacks subject matter jurisdiction over the plaintiff's claim for benefits in connection with the decedent's death.

In its review of the commissioner's decision, the review board rejected the plaintiff's contention that the commissioner was obliged to consider the decedent's total Connecticut miles in determining whether Connecticut was the place of his employment relation with the defendant. It concluded that, although the plaintiff's methodology, under which the decedent's total Connecticut miles were considered, was "reasonable," the commissioner had the discretion to decide whether to adopt it in making her determination as to whether Connecticut was the place of the decedent's employment relation with the defendant. On this score, the review board concluded: "There is no precedent on the issue of how a trial commissioner may best ascertain what activities on an employee's part should be considered in determining whether his or her work in Connecticut was a substantial part of [his or her] overall employment. While the methodology submitted by the [plaintiff] would provide a reasonable means to reach such a determination, we find the [defendant's] methodology was also a reasonable means to make such a determination. The trial commissioner found the [defendant's] approach more persuasive and that was her prerogative. . . . We also must extend deference to her decision that the level of activity the decedent engaged in for [the defendant] within Connecticut was not sufficiently significant to confer jurisdiction." (Citation omitted.)

Although we afford great deference to the commissioner's findings of fact, it was incumbent upon her to find and consider all facts that were relevant to the decedent's employment relation with the defendant. Here, the decedent, a truck driver, not only delivered

and transported goods for the defendant, but safeguarded those goods and the equipment with which he transported them over each and every mile he drove as the defendant's employee. Accordingly, the defendant compensated him for his work on the basis of miles he traveled as well as the deliveries he completed. Although the decedent was not assigned a Connecticut-specific delivery route, his total Connecticut miles allegedly accounted for 56 percent of his total miles driven. The commissioner's findings, which focused only on the decedent's actual number of Connecticut deliveries and the number of days he spent making those deliveries, failed to take into account all of the decedent's employment activities within or in relation to this state.

In light of the payment structure of the decedent's employment relation with the defendant, the nature of the decedent's work and the pattern of the decedent's assigned deliveries, under which his total Connecticut miles were claimed to have constituted the majority of the miles he drove in the course of his employment, a determination regarding the relationship between Connecticut and the decedent's employment relation required an investigation into the decedent's miles traveled to, from and within Connecticut.[19] See *Cleveland*

[19] A central purpose of the commissioner's inquiry was necessarily to determine the places where the decedent interacted with the defendant. On the most basic level, an employment relation is characterized by the employee's performance of work or services for the employer in return for remuneration by the employer. Here, where the decedent was a truck driver who was paid for his work, in material part, on the basis of *the miles he drove for his employer*, the commissioner could not reasonably determine the significance of Connecticut's relationship to or interest in that employment relation without making findings as to and considering the miles he drove to, through and back from Connecticut in performing his assigned work. Notwithstanding this conclusion, we agree with the concurrence that the precise methodology for determining whether and how the decedent's Connecticut-related mileage established a sufficiently significant relationship between Connecticut and the decedent's employment relation with the defendant is a matter properly left to the discretion of the commissioner.

v. *U.S. Printing Ink, Inc.*, supra, 218 Conn. 183 (recognizing commissioner considered plaintiff truck driver's Connecticut deliveries and time spent driving through Connecticut to make deliveries in other states in finding Connecticut had jurisdiction over workers' compensation claim); see also *Jaiguay* v. *Vasquez*, supra, 287 Conn. 346 (determination of whether state has legitimate interest in having injured employee compensated depends on nature of employment relation); *Knapp* v. *Hamm & Phillips Service Co.*, 824 N.W.2d 785, 790–91 (S.D. 2012) (considering relative percentage of time employee spent in state in evaluating state's connection to employment relation for purposes of awarding workers' compensation benefits). Because the commissioner failed to consider all facts pertinent to the issue of whether Connecticut had a sufficiently significant relationship to or interest in the decedent's employment relation with the defendant to warrant awarding dependent's benefits to the plaintiff, his surviving spouse, under the act, we conclude that her conclusion that Connecticut law did not apply to the plaintiff's claim was the product of the improper application of the *Cleveland* test. See *McQuade* v. *Ashford*, supra, 130 Conn. 482.[20]

---

[20] In *McQuade*, the plaintiff had sought workers' compensation benefits, claiming that he had suffered a heart injury, which ultimately caused paralysis, while blasting dynamite in the course of his employment. *McQuade* v. *Ashford*, supra, 130 Conn. 478. Concluding that the plaintiff's work was not a material factor in causing the injury, the commissioner denied the claim for benefits. Our Supreme Court ultimately concluded that the commissioner did not find certain facts concerning the development of the plaintiff's disability that were material to the issue of causation. Because a finding as to "some or all of [those facts] might so seriously affect the weight to be given to the opinions of the experts as to establish that this conclusion was unwarranted," the case was remanded to the commissioner for additional fact-finding. Id., 484. Here, the decedent was a truck driver. By refusing to make findings as to his driving, the commissioner failed to find facts regarding the most basic aspect of his employment. Such findings were essential to the commissioner's determination in this case. Indeed, without them this court cannot determine if the decision of the commissioner or the decision of the review board was based upon an incorrect application of the law to

Turning to the second element of her claim, the plaintiff also contends that "the commissioner based her decision that the [decedent's] employment relationship to Connecticut [was not] sufficiently significant [to award her benefits] on factors that were legally irrelevant to the employment relationship." We agree. Just as the commissioner must consider all facts pertinent to the decedent's Connecticut-related employment activities, the commissioner's findings also must not include, or at least not be based materially upon, facts that have no bearing on the relationship between this state and the employee's assigned work.

In the present case, the commissioner considered the following facts that were unrelated to the decedent's employment relation with the defendant: (1) that the defendant's revenue generated from business within Connecticut constituted less than 1 percent of its overall revenue for 2004; (2) that the total miles driven by all of the defendant's vehicles in Connecticut in 2004 amounted to less than 1 percent of the total miles driven by all of its vehicles in the United States and Canada during that year; and (3) that the defendant was incorporated in Georgia and maintained its principal place of business in Arkansas.

First, the commissioner's finding that the revenue generated by the defendant's business in Connecticut constituted less than 1 percent of its overall revenue for 2004 is demonstrably irrelevant to the issue of whether the decedent's work for the defendant in a DCS position bore a sufficiently significant relationship with Connecticut to warrant awarding dependent's benefits to his surviving spouse under the act. Such a finding improperly changed the focus of the commissioner's inquiry from the relationship between Connecticut and

the subordinate facts or from an inference illegally or unreasonably drawn from them.

the decedent's employment relation with the defendant, which clearly is relevant to Connecticut's interest in awarding dependent's benefits to his surviving spouse, to the relationship between Connecticut and the defendant itself, which manifestly is not. Here, to reiterate, the plaintiff's decedent performed all of his assigned duties in a restricted territory, limited to the stores of a single corporation located in a specific geographical area. It was thus inappropriate to compare the defendant's total Connecticut revenues to its total North American revenues in the year of the decedent's death as a basis for determining the significance of the relationship between the decedent's employment relation to his employer and Connecticut.

Second, for similar reasons, the commissioner's finding that less than 1 percent of all miles driven by the defendant's fleet of delivery trucks in 2004 were driven in Connecticut ignores the fact that the decedent was not assigned to a route that potentially could have sent him throughout the United States or Canada. Rather, the defendant assigned the decedent to a DCS position in which he made deliveries only to specific Family Dollar Tree stores in specific locations in the northeastern United States.[21] This finding thus failed to focus on and take account of the decedent's particular work responsibilities for the defendant or of the relationship between the decedent's particular employment relation, pursuant to which he performed such work, and this state. The record reveals that during his ten weeks of employment by the defendant, the decedent's deliveries were made to only nine American states—five of which were located in New England—and the District of Columbia.[22]

---

[21] The decedent's position "[involved] a specific contract with a specific customer at specific locations to provide transportation needs for that location." See footnote 7 of this opinion.

[22] The decedent made deliveries in Connecticut, Massachusetts, Maryland, New Hampshire, New Jersey, Pennsylvania, Rhode Island, Vermont, Virginia and the District of Columbia.

Third, the fact that the defendant was incorporated in Georgia and maintained its principal place of business in Arkansas similarly fails to consider the decedent's assigned work for the defendant, which was never performed in either of those states. The defendant's unrelated business activities under different contracts or in other aspects of its North American operations to which the decedent was not assigned are simply irrelevant to the issue of whether the decedent's employment relation with the defendant had a sufficiently significant relationship with Connecticut to warrant awarding benefits to his surviving spouse under the act.

Because the commissioner based her decision on facts that were demonstrably irrelevant to the issue of whether Connecticut had a sufficiently significant relationship with the decedent's employment relation with the defendant to warrant awarding the plaintiff dependent's benefits under the act, we conclude that her determination was based upon an improper application of controlling law. We conclude, therefore, that the review board improperly affirmed the commissioner's dismissal of the plaintiff's claim for lack of subject matter jurisdiction. Accordingly, we remand the case for further proceedings, to wit: factual findings regarding the decedent's total Connecticut miles for which he was paid and a determination as to whether the facts pertinent to the decedent's employment relation with the defendant establish a sufficiently significant relationship between the decedent's employment relation and Connecticut to warrant awarding the plaintiff dependent's benefits under the act.

The decision of the Workers' Compensation Review Board is reversed and the case is remanded to the board with direction to reverse the commissioner's decision

and to remand the case for further proceedings consistent with this opinion.

In this opinion BISHOP, J., concurred.

BEACH, J., concurring. I agree with the majority's conclusion that the case should be remanded to the workers' compensation commissioner for the purpose of making findings regarding mileage attributable to Connecticut. Although it appears from the commissioner's finding and award that she did consider the mileage of the decedent, Alex Springer (decedent), as set forth in several trial exhibits, she did not make express factual findings with respect to this issue. In the context of this case, such express findings may be necessary for review, as outlined in *McQuade* v. *Ashford*, 130 Conn. 478, 482–84, 35 A.2d 842 (1944).

I write separately, however, to emphasize the narrow nature of the remand. First, although express findings should be made, we are not directing the commissioner to apply any particular method in determining what mileage should be attributed to Connecticut. I see no compelling reason, for example, necessarily to adopt the methodology proposed by the plaintiff, Donna Springer. A commissioner presumably may apply different criteria in assessing whether or to what degree certain mileage is significant in determining Connecticut's connection to the employment relation.

Further, it is clear to me that the commissioner generally considered appropriate factors[1] in the determination of whether Connecticut was "the place of the

---

[1] The trial commissioner found facts with respect to how the decedent applied for his job; where the decedent was hired; where the decedent was trained; where the decedent's employment was supervised; the locations of the decedent's performance; the presence of the defendant J.B. Hunt Transport, Inc., in Connecticut in terms of facilities and personnel; and the location of the company's headquarters.

employment relation." *Cleveland* v. *U.S. Printing Ink, Inc.*, 218 Conn. 181, 195, 588 A.2d 194 (1991). As catalogued in *Burse* v. *American International Airways, Inc.*, 262 Conn. 31, 808 A.2d 672 (2002), such factors include the location of the company's headquarters, the employee's base of operations, the extent of the employer's contacts with this jurisdiction, where the employment was administered and supervised, as well as where the employee physically spent his employment-related time. Id., 39–40. In short, a variety of factors is to be considered in the determination of whether this state is "the place of the employment relation." *Cleveland* v. *U.S. Printing Ink, Inc.*, supra, 195; see, e.g., *Stacy* v. *Matthew Bender Co.*, 86 App. Div. 2d 913, 914, 448 N.Y.S.2d 532 (1982) (jurisdiction of Workers' Compensation Board determined on basis of evaluation of "the sufficiency of significant contacts between the employment and this [s]tate"; relevant considerations include where employment performed, location of principal office of employer, place of interview, place where employment directed and administered); *Bugaj* v. *Great American Transportation, Inc.*, 20 App. Div. 3d 612, 613–14, 798 N.Y.S.2d 529 (2005) (many factors may be considered in assessing sufficiency of contacts between employment and local state, "including the location of the employer's office, as well as the location of the employee's performance, the locations where the employee was recruited and hired, and whether the employee resided in New York, was regularly contacted there by the out-of-state employer and was expected to return to New York after out-of-state assignments"); *Martin* v. *American Colloid Co.*, 804 N.W.2d 65 (S.D. 2011) (same); *Vaughn* v. *Nelson Bros. Construction*, 520 N.W.2d 395, 397 (Minn. 1994) ("[a]lthough the quantity of time an employee spends in a single locale may be a factor in the determination of the situs of the employment relation, it should not be controlling"; other factors include place of employment supervision

and "source of remuneration"); see also *Baron* v. *Genlyte Thomas Group, LLC,* 132 Conn. App. 794, 802–805, 34 A.3d 423, cert. denied, 303 Conn. 939, 37 A.3d 155 (2012). The test, in sum, is pragmatic, with the purpose of determining whether the locations of the interactions between employer and employee demonstrate a sufficient connection with this state to compel the imposition of this state's workers' compensation law in general and in its benefits structure in particular.

As the authority cited previously makes clear, the relative percentage of the amount of time a worker spends in Connecticut is, of course, relevant to the inquiry, but is not necessarily of overriding significance. The result in *Cleveland,* for example, had nothing to do with the percentage of time spent in Connecticut; in *Cleveland,* the majority decided that the law of this state could be applied because this state was the state where the injury occurred. See *Cleveland* v. *U.S. Printing Ink, Inc.,* supra, 218 Conn. 195. *Burse* aptly stated that *Cleveland* "did not require [the Supreme Court] to elaborate on what [it] meant by 'the place of' in connection with the employment contract or employment relation . . . ." *Burse* v. *American International Airways, Inc.,* supra, 262 Conn. 38.

I concur, then, in the majority's resolution requiring further findings. I believe, however, that the commissioner and the Workers' Compensation Review Board had the legal discretion to apply a test to determine "the place of the employment relation"; *Cleveland* v. *U.S. Printing Ink, Inc.,* supra, 218 Conn. 195; which examined many factors.